UNITED STATES NAVIGATION CO., INC., *v.*
CUNARD STEAMSHIP CO., LTD., ET AL.

No. 296.   Argued January 8, 11, 1932.—Decided February 15, 1932.

*Mr. Mark W. Maclay,* with whom *Mr. John Tilney Carpenter* was on the brief, for petitioner.

*Mr. Roscoe H. Hupper,* with whom *Mr. Charles C. Burlingham* was on the brief, for respondents.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

The United States Navigation Company is a corporation operating ships in foreign commerce. It brought this suit in the federal district court for the southern district of New York to enjoin respondents from continuing an alleged combination and conspiracy in violation of the Sherman Antitrust Act, c. 647, 26 Stat. 209, Title 15, U. S. C., §§ 1–7, and of the Clayton Act, c. 323, 38 Stat. 730, Title 15, U. S. C., §§ 12–27. The district court granted a motion to dismiss the amended bill on the ground, principally, that the matters complained of were

within the exclusive jurisdiction of the United States Shipping Board, under the Shipping Act of 1916, c. 451, 39 Stat. 728, Title 46, U. S. C., §§ 801–842, as amended by the Merchant Marine Act of 1920, c. 250, 41 Stat. 988. 39 F. (2d) 204. The circuit court of appeals affirmed. 50 F. (2d) 83.

For present purposes, the substance of the pertinent allegations of the bill may be stated as follows: The petitioner, during the time mentioned in the bill, operated steamships for the carriage of general cargo between the port of New York and specified foreign ports. The respondents are corporations also engaged in foreign commerce between the United States and specified foreign countries, carrying ninety-five per cent. of the general cargo trade from North Atlantic ports in the United States to the ports of Great Britain and Ireland. These corporations and the petitioner are the only lines maintaining general cargo services in that trade. Respondents have entered into and are engaged in a combination and conspiracy to restrain the foreign trade and commerce of the United States in respect of the carriage of general cargo from the United States to the foreign ports named, with the object and purpose of driving the petitioner and all others not parties to the combination out of, and of monopolizing, such trade and commerce. The conspiracy involves the establishment of a general tariff rate and a lower contract rate, the latter to be made available only to shippers who agree to confine their shipments to the lines of respondents. The differentials thus created between the two rates are not predicated upon volume of traffic or frequency or regularity of shipment, but are purely arbitrary and wholly disproportionate to any difference in service rendered, the sole consideration being their effect as a coercive measure. The tariff rate in numerous instances is as much as one hundred per cent. higher than the contract rate. The disproportionately

wide spread of these differentials is wholly arbitrary and unreasonable. The respondents have put into effect what is called a scheme of joint exclusive patronage contracts, by which shippers are required to agree to ship exclusively by their lines, and to refrain from offering any shipments to petitioner. Unless they so agree, the shippers are forced to pay the far higher general tariff rates. This plan is resorted to for the purpose of coercing shippers to deal exclusively with respondents and refrain from shipping by the vessels of petitioner, and thus exclude it entirely from the carrying trade between the United States and Great Britain.

Other means to accomplish the same end are alleged, such as, giving rebates; spreading false rumors and falsely stating that petitioner is about to discontinue its service; making use of their combined economic bargaining power to coerce various shippers, who are also producers of commodities used in large quantities by respondents, to enter into joint exclusive contracts with them; and threatening to blacklist forwarders and refuse to pay them joint brokerage fees unless they discontinue making, or advising shippers to make, shipments in petitioner's ships. Certain overt acts are alleged as being in furtherance of the combination, conspiracy, and attempt to monopolize. A more detailed analysis of the amended bill, is embodied in the statement of the case which precedes the opinion of the court below.

It may be conceded that, looking alone to the Sherman Antitrust Act, the bill states a cause of action under §§ 1 and 2 of that act, and, consequently, furnishes ground for an injunction under § 16 of the Clayton Act, unless the Shipping Act stands in the way; and this was the view of both courts below.

The Shipping Act is a comprehensive measure bearing a relation to common carriers by water substantially the same as that borne by the Interstate Commerce Act to

interstate common carriers by land. When the Shipping Act was passed, the Interstate Commerce Act had been in force in its original form or in amended forms for more than a generation. Its provisions had been applied to a great variety of situations, and had been judicially construed in a large number and variety of cases. The rule had become settled, that questions essentially of fact and those involving the exercise of administrative discretion, which were within the jurisdiction of the Interstate Commerce Commission, were primarily within its exclusive jurisdiction, and, with certain exceptions not applicable here, that a remedy must be sought from the commission before the jurisdiction of the courts could be invoked. In this situation the Shipping Act was passed. In its general scope and purpose, as well as in its terms, that act closely parallels the Interstate Commerce Act; and we cannot escape the conclusion that Congress intended that the two acts, each in its own field, should have like interpretation, application and effect. It follows that the settled construction in respect of the earlier act must be applied to the later one, unless, in particular instances, there be something peculiar in the question under consideration, or dissimilarity in the terms of the act relating thereto, requiring a different conclusion.

The decisions of this court which deal with the subject under the Interstate Commerce Act are fully reviewed by the court below in an able and carefully drawn opinion. It is enough for us here to refer to a few illustrative cases. In *Great Northern Ry. Co.* v. *Merchants Elevator Co.,* 259 U. S. 285, 291, the general rule and an exception to it are considered. The immediate question there at issue concerned merely the legal construction of an interstate tariff, no question of fact, either as an aid to the construction, or in any other respect, and no question of administrative discretion, being involved. It was held that the issue was within the jurisdiction of the courts without preliminary

resort to the commission. But the distinction between that case and one where preliminary resort to the commission is necessary was definitely stated. Such resort, it was said, must be had where a rate, rule or practice is attacked as unreasonable or as unjustly discriminatory, and also where it is necessary, in the construction of a tariff, to determine upon evidence the peculiar meaning of words or the existence of incidents alleged to be attached by usage to the transaction. In all such cases the uniformity which it is the purpose of the Commerce Act to secure could not be obtained without a preliminary determination by the commission. Preliminary resort to the commission " is required because the enquiry is essentially one of fact and of discretion in technical matters; and uniformity can be secured only if its determination is left to the Commission. Moreover, that determination is reached ordinarily upon voluminous and conflicting evidence, for the adequate appreciation of which acquaintance with many intricate facts of transportation is indispensable; and such acquaintance is commonly to be found only in a body of experts. But what construction shall be given to a railroad tariff presents ordinarily a question of law which does not differ in character from those presented when the construction of any other document is in dispute."

In *Board* v. *Great Northern Ry. Co.,* 281 U. S. 412, an interlocutory injunction had been granted by a federal district court of three judges in a suit assailing intrastate railroad rates as working undue and unreasonable discrimination against interstate commerce. The order granting the injunction was reversed on the ground that the district court was without power to entertain the suit in advance of a determination of the question by the Interstate Commerce Commission.

" The inquiry," we said (pp. 421–422), " would necessarily relate to technical and intricate matters of fact,

and the solution of the question would demand the exercise of sound administrative discretion. The accomplishment of the purpose of Congress could not be had without the comprehensive study of an expert body continuously employed in administrative supervision. Only through the action of such a body could there be secured the uniformity of ruling upon which appropriate protection from unreasonable exactions and unjust discriminations must depend."

So the rule has been applied where recovery was sought by a shipper for unreasonable and excessive freight rates not found to be unreasonable by the commission, *Texas & Pac. Ry. Co.* v. *Abilene Cotton Oil Co.*, 204 U. S. 426; where the question was as to the reasonableness of the carrier's practice in distributing cars, *Midland Valley R. Co.* v. *Barkley*, 276 U. S. 482; where the reasonableness of a particular practice of routing was involved, *Northern Pacific Ry. Co.* v. *Solum*, 247 U. S. 477, 483; where the continuance of service on an industrial track was assailed as unduly discriminatory, *Western & Atlantic R. Co.* v. *Public Service Comm.*, 267 U. S. 493, 497; and where an action was brought under § 7 of the Antitrust Act, based upon an alleged conspiracy among carriers to fix rates, *Keogh* v. *Chicago & N. W. Ry. Co.*, 260 U. S. 156. In the case last cited it was pointed out (p. 163) that if a shipper were permitted to recover under the Antitrust Act, the amount recovered might, like a rebate, operate to give him a preference over his trade competitors. "Uniform treatment would not result, even if all sued, unless the highly improbable happened, and the several juries and courts gave to each the same measure of relief."

That the Shipping Act covers the dominant facts alleged in the present case as constituting a violation of the Antitrust Act is clear. Section 14 prohibits retaliation by a common carrier by water against any shipper by resort

to discriminating or unfair methods because the shipper has patronized another carrier; and § 14a confers power upon the board to determine the question. The latter section also confers similar power on the board in respect of any combination, agreement or understanding involving transportation of passengers or property between foreign ports, deferred rebates, or any other unfair practice designated in § 14. Section 16 makes it unlawful for any such carrier, alone or in conjunction with another, to give any undue or unreasonable preference or advantage to any particular person, locality or description of traffic, or to subject any such person, locality or traffic to undue or unreasonable prejudice or disadvantage in any respect, or to allow any person to obtain transportation for property at less than the regular rates by any unjust or unfair device or means. Section 17 prohibits any charge or rate unjustly discriminatory between shippers or ports, etc., and gives the board authority to alter the same to the extent necessary to correct the discrimination or prejudice, and to order the carrier to discontinue. Section 22 authorizes any person to file with the board a complaint, setting forth any violation of the act by a common carrier by water, and asking reparation for the injury. Copy of the complaint is to be furnished to the carrier, who is required to satisfy the complaint or answer it in writing. If not satisfied, the board is authorized to investigate the case and make such order as it deems proper, and the board may direct payment of full reparation for the injury caused by such violation. The board is also authorized, upon its own motion, except as to orders for the payment of money, to investigate any violation of the act. We need not pursue the analysis further. These and other provisions of the Shipping Act clearly exhibit the close parallelism between that act and its prototype, the Interstate Commerce Act, and the applicability to both of like principles of construction and administration.

The act is restrictive in its operation upon some of the activities of common carriers by water, and permissive in respect of others. Their business involves questions of an exceptional character, the solution of which may call for the exercise of a high degree of expert and technical knowledge. Whether a given agreement among such carriers should be held to contravene the act may depend upon a consideration of economic relations, of facts peculiar to the business or its history, of competitive conditions in respect of the shipping of foreign countries, and of other relevant circumstances, generally unfamiliar to a judicial tribunal, but well understood by an administrative body especially trained and experienced in the intricate and technical facts and usages of the shipping trade; and with which that body, consequently, is better able to deal. Compare *Chicago Board of Trade* v. *United States*, 246 U. S. 231, 238; *United States* v. *Hamburgh-American S. S. Line*, 216 Fed. 971.

A comparison of the enumeration of wrongs charged in the bill with the provisions of the sections of the Shipping Act above outlined conclusively shows, without going into detail, that the allegations either constitute direct and basic charges of violations of these provisions or are so interrelated with such charges as to be in effect a component part of them; and the remedy is that afforded by the Shipping Act, which to that extent supersedes the antitrust laws. Compare *Keogh* v. *Chicago & N. W. Ry. Co.*, *supra*, at p. 162. The matter, therefore, is within the exclusive preliminary jurisdiction of the Shipping Board. The scope and evident purpose of the Shipping Act, as in the case of the Interstate Commerce Act, are demonstrative of this conclusion. Indeed, if there be a difference, the conclusion as to the first named act rests upon stronger ground, since the decisions of this court compelling a preliminary resort to the commission

were made in the face of a clause in § 22 of the Interstate Commerce Act, that nothing therein contained should in any way abridge or alter existing common law or statutory remedies, but that the provisions of the act were in addition to such remedies (*Mitchell Coal Co.* v. *Pennsylvania R. Co.,* 230 U. S. 247, 256); a clause that finds no counterpart in the Shipping Act.

There is nothing in § 15 of the Shipping Act which militates against the foregoing views. That section requires that agreements between carriers, or others subject to the act, in respect of a number of enumerated matters, or " in any manner providing for an exclusive, preferential, or coöperative working arrangement," shall be filed immediately with the board; and that the term " agreement " shall include understandings, conferences, and other arrangements. Thereupon, the board is authorized to disapprove, cancel or modify any such agreement, " whether or not previously approved by it," which it finds to be unjustly discriminatory or unfair as between carriers, shippers, etc., " or to operate to the detriment of the commerce of the United States, or to be in violation of this Act." But a failure to file such an agreement with the board will not afford ground for an injunction under § 16 of the Clayton Act at the suit of private parties— whatever, in that event, may be the rights of the government—since the maintenance of such a suit, being predicated upon a violation of the antitrust laws, depends upon the right to seek a remedy under those laws, a right which, as we have seen, does not here exist. If there be a failure to file an agreement as required by § 15, the board, as in the case of other violations of the act, is fully authorized by § 22, *supra,* to afford relief upon complaint or upon its own motion. Its orders, in that respect, as in other respects, are then, under § 31, for the first time, open to a judicial proceeding to enforce, suspend or set them aside in accordance, generally, with the rules and limita-

tions announced by this court in respect of like orders made by the Interstate Commerce Commission.

It is said that the agreement referred to in the bill of complaint cannot legally be approved. But this is by no means clear. In the first place, while the allegations of the bill must be taken as true upon the motion to dismiss, they still are subject to challenge by pleading and proof if the motion be denied. We cannot assume that, in a proceeding before the board in which the whole case would be open, similar allegations will not be denied or met by countervailing affirmative averments. In any event, it reasonably cannot be thought that Congress intended to strip the board of its primary original jurisdiction to consider such an agreement and " disapprove, cancel, or modify " it, because of a failure of the contracting parties to file it as § 15 requires. A contention to that effect is clearly out of harmony with the fundamental purposes of the act and specifically with the provision of § 22 authorizing the board to investigate *any* violation of the act upon complaint or upon its own motion and make such order as it deems proper. And whatever may be the form of the agreement, and whether it be lawful or unlawful upon its face, Congress undoubtedly intended that the board should possess the authority primarily to hear and adjudge the matter. For the courts to take jurisdiction in advance of such hearing and determination would be to usurp that authority. Moreover, having regard to the peculiar nature of ocean traffic, it is not impossible that, although an agreement be apparently bad on its face, it properly might, upon a full consideration of all the attending circumstances, be approved or allowed to stand with modifications.

Petitioner contends that the Shipping Board has already determined that an agreement similar to the one here involved is unlawful under the Shipping Act, Eden Mining Co. *v.* Bluefields Fruit & S. S. Co., 1 U. S. S. B. 41,

and, therefore, that the courts may take jurisdiction of the case without further preliminary resort to the board. In support of this contention we are referred to *Mitchell Coal Co.* v. *Pennsylvania R. Co., supra,* (see p. 257), and *National Pole Co.* v. *Chicago & N. W. Ry. Co.,* 211 Fed. 65, 72. Without stopping to consider the general principle thus invoked, it is enough to say that the *Eden* case did not involve this agreement or these parties, and it was decided after a full hearing upon issue joined. Here we have only the allegations of the bill before us. If there be a formal written agreement, it is not set out; and it is pleaded, apparently, only according to the pleader's conception of its legal effect. There is at present no answer, and the question before us arises upon a motion to dismiss, which admits the facts, so far as they are well pleaded, only for the sake of the argument. What might be disclosed by an answer and upon a hearing, we do not know and are not permitted to conjecture. It may be, for aught that now appears, that in an original proceeding before the board, the allegations upon which petitioner relies may not be sustained, or may be so qualified as to render the *Eden* decision entirely inapplicable. Whatever might be the rule to be applied under other circumstances, we are of opinion that in the state of the present record the ordinary primary jurisdiction of the board has not been superseded by its decision in the *Eden* case. To hold otherwise would be to create the doubtful, and perhaps dangerous, precedent that a decision of the board in respect of one agreement definitely establishes that the rule of that decision must, without more, be applied to all other agreements alleged to be of a similar character, although it may turn out upon investigation that the allegations are not warranted, or the facts and circumstances of and surrounding the transaction are so wholly different as to afford ground for a different result.

*Decree affirmed.*