**HAWAIIAN AIRLINES, Limited, v. TRANS-PACIFIC AIRLINES, Limited (INTER-ISLAND STEAM NAV. CO., Limited, Third-Party Defendant).**

Civ. No. 817.

District Court, Hawaii.

June 7, 1948.

See also 75 F. Supp. 690.

Garner Anthony, of Honolulu, T. H. (Robertson, Castle & Anthony, of Honolulu, T. H., of counsel), for Hawaiian Airlines, Limited, and Inter-Island Steam Nav. Co., Limited.

Sai Chow Doo, of Honolulu, T. H., Frederick L. Hewitt, of San Francisco, Cal., and Coates Lear, of Washington, D. C. (Blair & Blair, of Washington D. C., and Fong, Miho & Choy, of Honolulu, T. H., of counsel), for Trans-Pacific Airlines, Limited.

J. FRANK McLAUGHLIN, Judge.

To the petition of Hawiian Airlines, Limited, for an injuction under § 1007 of the Civil Aeronautics Act, 49 U.S.C.A. § 647, against the scheduled air carrier operations of the non-certificated but registered irregular air carrier defendant, Trans-Pacific Airlines, Ltd., filed a cross-complaint against Hawaiian and its parent corporation, Inter-Island Steam Navigation Company, Limited, under the Sherman and Clayton Acts. 15 U.S.C.A. §§ 1–7, 15 note, § 12 et seq. Though later amended, it will here be denominated as the cross-complaint.

Pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, the anti-trust cross-

complaint was severed from the original complaint for trial purposes. See U.S.D.C. Hawaii 1947, 73 F.Supp. 68.

To the cross-complaint the defendants, Hawaiian and Inter-Island have filed under Rule 12(b)(6) a motion to dismiss, supported by an undenied affidavit, upon the sole ground that the matter complained of by Trans-Pacific is primarily within the jurisdiction of the Maritime Commission and the Civil Aeronautics Board. In this position the motion under Rule 12(b)(6) becomes one for summary judgment under Rule 56.

Leave was granted to the Civil Aeronautics Board to appear in the cross-complaint case through the United States Attorney as a friend of the Court. Upon the motion extensive argument was had, and briefs were filed by the parties and also by the Civil Aeronautics Board.

The matter complained of by Trans-Pacific upon the basis of §§ 1, 2 and 3 of the Sherman Act, 15 U.S.C.A. §§ 1, 2 and 3 and §§ 3, 7 and 8 of the Clayton Act, 15 U.S.C.A. §§ 14, 18 and 19, and the prayer for triple damages (15 U.S.C.A. § 15) and for an injunction (15 U.S.C.A. § 26) directing, amongst others things, the divestiture by Inter-Island of its stock control of Hawaiian, is that:

1. Operating over substantially parallel routes and rendering competing services, the control of the certificated air carrier, Hawaiian, by the water carrier, Inter-Island, constitutes a combination in restraint of trade in violation of the Sherman Act, which was illegally conceived in violation of § 7 of the Clayton Act.

2. The Inter-Island-Hawaiian combination has become a monoply or is conspiring to attain that status.

3. Inter-Island's and Hawaiian's interlocking directorates constitute a violation of § 8 of the Clayton Act.

4. Pursuant to an unlawful combination and conspiracy to restrain trade, attempt to monopolize, and its unlawful monopolization of the air and water transportation of passengers and property between the islands of the Territory, Inter-Island and Hawaiian have, in violation of the Sherman and Clayton Acts:

(a) Decreased and planned to discontinue passenger service by Inter-Island so as to force passengers to its controlled air carrier, Hawaiian, the only certificated regular air carrier in the Territory;

(b) Coerced shippers of air freight to use Hawaiian rather than registered irregular air carriers upon the threat of discriminating against their water freight when they sought to ship by Inter-Island;

(c) Jointly conducted all-expense tours, additionally violating § 412 of the Civil Aeronautics Act, 49 U.S.C.A. § 492;

(d) Engaged in predatory air freight rate cutting to drive competing irregular air freight carriers out of business;

(e) Contracted, in furtherance of the conspiracy, with the Farmers Exchange, a cooperative, whereby the Exchange has bound itself not to use the facilities of any other air carrier to transport its produce; and

(f) In consonance with the object of its conspiracy, sought and obtained with unclean hands an injunction against Trans-Pacific as a means of furthering Inter-Island's and Hawaiian's monopoly (Hawaiian v. Trans-Pacific Airlines, supra).

From this alleged unlawful combination and conspiracy, and the steps taken by the defendants in furtherance thereof. Trans-Pacific claims accrued damage in the amount of $336,000 to September 9, 1947, the date of the preliminary injunction in the air carrier part of the case, and at the rate of $1,000 per day since that time.

There is no dispute concerning the doctrine of primary jurisdiction, which stems from Texas & Pac. Ry. v. Abilene Cotton Oil Co., 1907, 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553, and developed in such succeeding cases as Keogh v. Chicago & Northwestern Ry. Co., 1922, 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183; United States Navigation Co. v. Cunard S. S. Co., 1932, 284 U.S. 474, 52 S.Ct. 247, 76 L.Ed. 408; Central Transfer Co. v. Terminal R. Ass'n, 1933, 288 U.S. 469, 53 S.Ct. 444, 77 L.Ed. 899; Terminal Warehouse v. Pennsylvania R. Co., 1936, 297 U.S. 500, 56 S.Ct. 546, 80 L.Ed. 827; and Georgia v. Pennsylvania R. Co., 1945, 324 U.S. 439, 65 S.Ct. 716, 89

L.Ed. 1051. Rather, the sole question raised by the motion relates to the applicability of that doctrine to the cross-complaint under consideration.

The defendants argued that each specified act alleged to have been done in furtherance of the claimed unlawful combination and conspiracy, etc., raises questions the determination of which calls for the expert competence and specialized administrative discretion of the appropriate regulatory body created by Congress to handle, in the first instance, such technical matters. Therefore, it is submitted, each of these acts is within either the jurisdiction of the Maritime Commission or the Civil Aeronautics Board, and at least until Trans-Pacific has exhausted the administrative remedies, this Court lacks jurisdiction to consider its complaint filed under the anti-trust laws. Indeed, it is submitted that available administrative remedies are exclusive, and the Court is wholly without jurisdiction.

Referring to the broad scope of both the Shipping Act and the Civil Aeronautics Act and observing that any person (Shipping Act, 46 U.S.C.A. § 821) or any air carrier (Civil Aeronautics Act, 49 U.S.C.A. § 642) may complain to the Commission or the Board and that both agencies have independent investigatory powers supported by authority to issue, if warranted, cease and desist orders, the defendants' unfolded argument is that:

(a) With respect to the decrease and planned discontinuance by Inter-Island of passenger service, thus forcing passengers to its subsidiary air carrier, Hawaiian, if it be a wrong, it is cognizable by the Commission under §§ 14, 14a, 16 and 17, 18 of the Shipping Act prohibiting discrimination, undue preference and unreasonable practices (46 U.S.C.A. §§ 812, 813, 815, 816, and 817), while as to Hawaiian's participation the Civil Aeronautics Board could consider it an unfair method of competition under § 411 of the Civil Aeronautics Act, 49 U.S.C.A. § 491;

(b) So, too, as to the alleged threats of discrimination to shippers of freight by water unless for their air freight they used Hawaiian;

(c) If all-expense tours be wrong, the wrong falls within the scope of both acts, 46 U.S.C.A. § 815 (first) and 49 U.S.C.A. § 484;

(d) Freight rate cutting by Hawaiian is a matter for the Civil Aeronautics Board under §§ 483, 484 and 491 of Title 49 U.S.C.A.;

(e) While the matter of the Farmers Exchange contract would be cognizable by the Board under the same sections of the Civil Aeronautics Act; and

(f) As to Hawaiian's motive for seeking an injunction, it is simply said to disclose the real basis for the cross-complaint, and attributable to a failure to comprehend the status of a certificated air carrier.

The defendants further contend the fact that Trans-Pacific alleges violation of the anti-trust laws does not render inapplicable the rule of primary jurisdiction. Georgia v. Pennsylvania R. Co., supra, the defendants endeavor to distinguish as resting upon the narrow ground that the Interstate Commerce Commission had not been given by Congress jurisdiction over rate-fixing combinations (49 U.S.C.A. § 5(1)), while the Shipping Act and the Civil Aeronautics Act are not limited to jurisdiction over pooling agreements only, but extend authority to all working agreements between carriers and other carriers (46 U.S.C.A. § 814; 49 U.S.C.A. § 492). It is conceded that perhaps the Maritime Commission would not have jurisdiction of a combination or conspiracy by or between these defendants since Hawaiian is not a carrier subject to the Shipping Act (46 U.S.C.A. § 814), but that clearly the Civil Aeronautics Board would have jurisdiction, for that Act covers such dealings by an air carrier with any other air carrier or other carrier (49 U.S.C.A. § 492(a)). So, the Civil Aeronautics Board having jurisdiction of such combination or conspiracy, unlike the Interstate Commerce Commission, there is no basis for being controlled here by Georgia v. Pennsylvania R. Co., supra.

At all events, referring upon this theory to its affidavit, the defendants say there really is nothing charged that has not already been approved by the Civil Aero-

nautics Board anyway, and hence the Court need not be concerned—as it is—over the apparent exemption of carriers regulated by different agencies from the anti-trust laws. With power in the Board to grant in the public interest exemption from such laws (49 U.S.C.A. § 494), Hawaiian represents that it has complied with all provisions of the Act and hence the Board knows all, and if Hawaiian be at fault the Board's duty under the Act would require it to move to correct the situation. Concretely it says it has filed all working agreements with the Board which either have been approved or not disapproved; data regarding all-expense tours similarly have been filed and treated by the Board; the Board has—as the Board in its brief admits—approved of Hawaiian's interlocking directorates as being not inconsistent with the public interest. Concerning the stock control of Hawaiian by Inter-Island, defendants assert that if such be not in the public interest, despite the fact that § 408 of the Act, 49 U.S.C.A. § 488, is prospective in operation and the immunity of § 414, 49 U.S.C.A. § 494, thus unavailable, nevertheless the Civil Aeronautics Board applies as a matter of policy the standards of § 408 to situations wherein stock control of a carrier by another carrier was acquired prior to the passage of the Act. Thus the Civil Aeronautics Board could suspend Hawaiian's certificate pursuant to § 401(h) of the Act, 49 U.S.C.A. § 481(h), until and unless Hawaiian's parent corporation sold enough stock in the air carrier to remove its control. That being so, by way of argument at least, it is said, therefore, this factor is also within the primary jurisdiction of the Board. Overall, too, it is stated that though Trans-Pacific complains about a monopoly it fails to understand that the Board has granted a limited monopoly to Hawaiian by failing to date to certify other air carriers in Hawaii, and such in the Board's discretion must be deemed to have been found by it to be in the public interest.

Trans-Pacific's counter argument is that defendants refuse to recognize that this is an anti-trust case, the essence of the alleged grievance being the affirmative charge that the defendants here unlawfully combined and conspired, attempted to monopolize, and have monopolized transportation commerce between the islands of the Territory. Closing their eyes to this charge, Trans-Pacific accuses defendants of dismembering the charge by considering only the specific acts which have been alleged to illustrate the basic charge. United States v. Patten, 1913, 226 U.S. 525, 544, 33 S.Ct. 141, 57 L.Ed. 333, 44 L. R.A.,N.S., 325; American Tobacco Co. v. United States, 6 Cir., 1944, 147 F.2d 93, 106, affirmed 1946, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575.

Naturally Trans-Pacific relies upon the Georgia case, supra, asserting it to be indistinguishable because, as defendants also admit, the Interstate Commerce Act, the Shipping Act, and the Civil Aeronautics Act are in pari materia, United States Navigation Co. v. Cunard S. S. Co., supra.

Without forsaking its major contention, Trans-Pacific denies defendants' contention that it has administrative remedies available which would provide the kind of relief it seeks. It asserts that:

1. Unlike the Court neither the Board nor the Commission has power to order Inter-Island to divest itself of control of Hawaiian. Stock control legally acquired prior to the Act is beyond the Board's power, 49 U.S.C.A. § 488. Railroad Control of Northeast Airlines, 4 C.A.B. 379, 386 (1943). Lacking approval under inapplicable § 408 of the Act, 49 U.S.C.A. § 488, defendants have obtained no grant of immunity by the Board from the anti-trust laws under § 414 of the Act, 49 U.S. C.A. § 494. The Maritime Commission lacks authority over the control of Hawaiian by Inter-Island as § 15 of the Shipping Act, 46 U.S.C.A. § 814 does not affect agreements between water carriers and air carriers, as air carriers are not persons subject to that law. Further, Inter-Island claims no anti-trust exemption under § 15 of the Shipping Act.

2. The Civil Aeronautics Board could not award damages (Page Airways, Inc., 6 C.A.B. 1601), while the Maritime Commission has power to repair only for charges in excess of the tariff, and Trans-

Pacific Airlines makes no claim to overcharges upon it by either defendant.

3. Neither administrative agency has jurisdiction over violations of the antitrust laws, and it is under those laws only that relief is sought.

4. As to the reduction and planned discontinuance of surface transportation and the suggestion that Trans-Pacific's remedy lies within §§ 14, 16 or 18 of the Shipping Act, Trans-Pacific invites attention to the fact that § 14 is concerned only with rebates or unjust discrimination as to which Trans-Pacific makes no charge or claim to relief on that basis; Section 16 avails not Trans-Pacific, for Trans-Pacific makes no charge as to itself or anyone that unlawful preferment has been given by the water carrier to a group, locality, or type of traffic, observing that Inter-Island's acts in this respect affect the entire traveling public; Section 18 aids Trans-Pacific not at all for again it makes no claim that Inter-Island has established, observed or enforced unreasonable rates or regulations. Trans-Pacific additionally states that nothing in the Shipping Act requires a water carrier to give adequate service to the public, or any service at all, and a discontinuance of its passenger service would not be a violation of the Shipping Act. To suggest, as defendants do, that Hawaiian's alleged participation in this matter might be a violation of § 411 of the Civil Aeronautics Act is claimed absurd, for obviously the Civil Aeronautics Board would not prohibit Hawaiian from carrying passengers who formerly traveled on the water carrier.

5. As to alleged threats against shippers of air freight being within the scope of § 14 and § 15 of the Shipping Act and § 411 of the Civil Aeronautics Act, Trans-Pacific re-asserts that this is not a case brought by an injured or threatened shipper, and neither agency could grant Trans-Pacific Airlines injunctive relief.

6. Approved or not (and in fact not approved or disapproved by the Civil Aeronautics Board) no charge of discrimination is made by Trans-Pacific on the basis of all-expense tours. They are referred to as illustrative of the alleged anti-trust violations.

7. As to the freight rate cutting and the Farmers Exchange contract, Trans-Pacific says the Exchange rates complained of are contract rates over which the Board has no jurisdiction, while as to reduced air freight rates no charge of discrimination or unreasonableness is made by Trans-Pacific, hence § 404(a) and (b) of the Civil Aeronuatics Act are inapplicable, while § 411 of that Act would avail naught as reduced air freight rates are hardly adverse to the public interest. Reference to these matters, Trans-Pacific repeats, is made to illustrate the combination and conspiracy to drive competition from the field.

8. The preliminary injunction obtained by Hawaiian in the air lines part of this case, Trans-Pacific claims is but resort by Hawaiian to a legal method to drive Trans-Pacific out of business, in keeping with the alleged overall combination, conspiracy and monopoly, by endeavoring to prevent it as a law violator from being considered eligible for certification as a regular air carrier.

The Civil Aeronautics Board in its brief, after reviewing the doctrine of primary jurisdiction, advises the Court that:

1. Were Trans-Pacific's charges limited to specific restraints of trade, the Board would have primary jurisdiction over each of them as "unfair methods of competition" under § 411 of the Act. See § 5 of Federal Trade Commission Act, 15 U.S.C.A. § 45, upon which § 411 was modeled; 83 Cong.Rec.5726 (1938); Hearings before House Committee on H. R. 5234, 75th Congress, 1st Sess., p. 349 (1937); and § 1107(f) of the Act exempting air carriers from § 5 of the Trade Commission Act. See also Federal Trade Commission v. Beech-Nut Packing Company, 1922, 257 U. S. 441, 42 S.Ct. 150, 66 L.Ed. 307, 19 A.L.R. 882, and Fashion Guild v. Federal Trade Comm., 1941, 312 U.S. 457, 61 S.Ct. 703, 85 L.Ed. 949, holding "unfair methods of competition" to include violation of anti-trust laws. The need for expertness and familiarity with the problems of air carriers supports this conclusion. W. R. Grace & Co. v. Civil Aeronautics Board, 2 Cir., 1946, 154 F.2d 271. However, even if only acts of restraining transportation were charged the Board doubts that it could

reach by its order a water carrier not subject to its jurisdiction.

2. The Board grants that it is powerless to award damages, but that alone does not disturb its primary jurisdiction over specific violations presenting specialized issues. Terminal Warehouse v. Pennsylvania R. Co., 1936, 297 U.S. 500, 56 S.Ct. 546, 80 L. Ed. 827. Such is said to be especially true as to the allegation of rate cutting, for in the area of rates the Board clearly has primary jurisdiction, Keogh v. Chicago & Northwestern Ry. Co., 1922, 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183, and Georgia v. Pennsylvania R. Co., 1945, 324 U.S. 439, 65 S.Ct. 716, 89 L.Ed. 1051.

3. As to § 412 of the Civil Aeronautics Act, 49 U.S.C.A. § 492, requiring the filing with the Board of all agreements with other carriers which affect air transportation, the Board advises that though filed by Hawaiian it has neither approved nor disapproved of the defendants' all-expense tour arrangements and hence they have acquired no anti-trust immunity under § 414. Until at least the Board has acted, it is suggested that it would be inappropriate for the Court to entertain the issue when it is one so clearly in the Board's primary jurisdiction.

4. As to the charge of monopoly arising from the control of Hawaiian by Inter-Island, the Board notes that in citing Northern Securities Co. v. United States, 1904, 193 U.S. 197, 24 S.Ct. 436, 48 L.Ed. 679; United States v. Union Pacific R. R. Co., 1912, 226 U.S. 61, 33 S.Ct. 53, 57 L.Ed. 124, and United States v. Southern Pac. Co., 1922, 259 U.S. 214, 42 S.Ct. 496, 66 L. Ed. 907, Trans-Pacific obviously relies upon cases wherein the Government sued in behalf of the public under § 15 of the Clayton Act, 15 U.S.C.A. § 25, and it is not required to prove a monopoly in order to obtain a dissolution injunction. While it is not clear that a private party has standing to obtain a decree of dissolution, if under § 16 of the Clayton Act, 15 U.S.C.A. § 26, and the language of American Tobacco Co. v. United States, 1946, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575; United States v. Aluminum Co. of America, 2 Cir., 1945, 148 F. 2d 416; and United States v. Socony-Vacuum Oil Co., 1940, 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129, it has, it must allege and show as a consequence of the suppression of competition between the defendants injury or the dangerous probability thereof to its private business, as distinguished from injury generally to the public for whom the Government sues. See Graves v. Cambria Steel Co., D.C.S.D.N.Y.1924, 298 F. 761; Contintental Securities Co. v. Michigan Central R. R. Co., 6 Cir., 1926, 16 F.2d 378, cert. denied, 1927, 274 U.S. 741, 47 S.Ct. 587, 71 L.Ed. 1320; National Supply Co. v. Hillman, D.C.W.D.Pa.1944, 57 F. Supp. 4; Bedford Cut Stone Co. v. Journeymen Stone Cutters' Ass'n, 1927, 274 U. S. 37, 54, 47 S.Ct. 522, 71 L.Ed. 916, 54 A. L.R. 791.

A complicating factor, though, points out the Civil Aeronautics Board, is that Hawaiian has a lawful limited monopoly by virtue of being a certificated air carrier, § 401(a) and (e) of the Act, 49 U.S.C.A. § 481(a) and (e), which the Board alone can affect.

However, the Board says registered irregular air carriers exempt by it from certain provisions of the Act, like Trans-Pacific Airlines, are within their legitimate scope entitled to be free from the threat of extinction by unlawful restraints of trade utilized by a combination dominating the transportation field in Hawaii. If such be properly alleged, the Court—not the Board —has jurisdiction to grant suitable relief against both or either defendant. American Tobacco Co. v. United States, supra, and United States v. Aluminum Co. of America, supra.

5. Upon the described facts the Board lacks adequate authority to handle the charge of monopoly. Since § 408(a) (5), 49 U.S.C.A. § 488(a) (5), is not retroactive and Inter-Island acquired control of Hawaiian in 1929, when it bore the name of Inter-Island Airways, Ltd.—nine years before the Civil Aeronautics Act—the Board could not order Inter-Island to divest itself of control of Hawaiian. By reason, therefore, of age and lack of jurisdiction over the water carrier, Inter-Island's control of Hawaiian is insulated from the Board's authority.

6. Viewing the alleged combination, etc., as a method of "unfair competition" within the Board's jurisdiction under § 411 of the

Act, the Board says it still lacks effective means of dealing with it, for again the control reposes with Inter-Island, not the person over whom it has jurisdiction, Hawaiian.

7. Assuming §§ 7 and 11 of the Clayton Act, 15 U.S.C.A. § 18 and 21, give the Board, as they do, power to order a divestiture where the person acquired in violation of § 7 of the Clayton Act is an air carrier, the Board would have primary and exclusive jurisdiction by reason of § 1107(g) of the Civil Aeronautics Act (see 15 U.S.C.A. § 21) giving the Board as to air carriers Clayton Act § 7 power.

But, says the Board, Trans-Pacific Airlines does not only allege a violation of Clayton Act § 7. Further, a monopoly legal in its inception may become illegal. However, more troublesome is the substantial doubt as to the applicability of § 7 of the Clayton Act to this situation. For once more Inter-Island did not acquire control of an existing business, but set Hawaiian up in the business of air transportation as a separate corporation. This § 7's second sentence, third pararaph, states that nothing in § 7 shall preclude a corporation engaged in commerce from forming subsidiaries to carry on legitimate and natural extensions of its business or from owning all or part of the stock of the subsidiary. Consequently the Board submits since without setting up Hawaiian, Inter-Island could have directly engaged in air transportation in 1929 and avoided a § 7 question, so it would seem that by setting up Hawaiian, Inter-Island did not have the effect of substantially lessening competition. Upon this analysis indicating a lack of § 7 power to deal with unique situations, the Board submits the Court should not refer the case to it, at least until it decides the monopoly questions. However, the Board avers it is not conceding it is powerless under § 411 and § 7 of the Clayton Act to dissolve an illegal combination or monopoly, it is merely saying in the absence of being confronted, upon facts such as these, with the problem that it has substantial doubts of its ability to handle the problem adequately.

8. Its approval (Civil Aeronautics Board, Orders Serial Number 155 of August 29, 1939 and Serial Number 2565 of December 4, 1943) of defendants' interlocking directorates under § 409(a) of the Civil Aeronautics Act, 49 U.S.C.A. § 489(a), granting § 414, 49 U.S.C.A. § 494, immunity from § 8 of the Clayton Act is not a grant of immunity to the defendants of the basic control relationship by Inter-Island of Hawaiian. It is but a grant of § 8 immunity to the directors, and Trans-Pacific's charges based on this interlocking feature are subject to summary dismissal as an unlawful restraint. The Board emphasizes that it has never had under review via § 408, 49 U.S.C.A. § 488, of the Act Inter-Island's basic control of Hawaiian, nor could it, it repeats, because Inter-Island's control antedated the Civil Aeronautics Act.

■ I do not believe this to be a case to which the rule of primary jurisdiction is applicable. The motion will accordingly be denied.

Having reviewed the arguments of the parties and the analysis of the problem provided by the Civil Aeronautics Board, the problem and principles involved are fully exposed. It will, therefore, suffice to state the reasons for the conclusion which has been reached.

In the first place, to concentrate upon the specific acts and actions attributed to the defendants by the allegations of Trans-Pacific—as do the defendants—is to obtain a distorted conception of the fundamental charge of the cross-complaint.

Further, if to do so were the proper approach, as dissected it by no means follows from the facts at hand that the rule of primary jurisdiction is applicable. Aside from the interlocking directorates alleged to be violative of the Civil Aeronautics Act—which in and of itself is not by reason of Board approval thereof—no one of the other particular acts are charged by Trans-Pacific to be violations of either the Shipping Act or the Civil Aeronautics Act. Rather they are labeled as violative of the anti-trust laws. Yet, granting that labels do not alter the nature of the acts, even if each one be violative of either one or the other of the two regulatory acts—though it be questionable that other than rate cutting and the all-expense tour plans might be— it still is far from clear that this would be

a situation to which the primary jurisdiction doctrine should be applied because:

1. Trans-Pacific does not charge that it has been injured by these acts in such a way as to give it standing as a complainant before either agency. That is, there appears in and of itself to be nothing wrong in a water carrier going out of the passenger business; Trans-Pacific has not been a threatened shipper; the joint tour plan as such is not set out as being discriminatory; it does not charge the cut freight rates as such to be unreasonable; contract rates are not regulated rates; and of course the matter of the preliminary injunction has no relation to any provision of either act.

2. But whether any of the specific acts be violative of either act—and such seems most probable under only the Civil Aeronautics Act—neither agency is empowered to grant the type of relief prayed for. Neither agency is equipped to award damages, and the questions raised by the specifics are not ones raising questions of fact calling for uniformity of decision nor the application of expert knowledge of a particular industry.

3. Neither the Commission nor the Board has power to handle both defendants. This is of more significance as to the Board —for the Commission appears almost totally ineffective in these circumstances—for the power reposes with Inter-Island which the Board cannot either legally or practically reach by an order. It is in this particular that the Cunard case is distinguishable. There not only was the gist of the complaint rate discrimination, but all of the parties were amenable to the Maritime Commission, and it had power to see to it that its orders were obeyed. Here if the Commission and the Board had power to sit together and to take joint action if warranted against these defendants, then the rule strenuously urged upon this motion would have sensible application.

But debatable as all this may be, I deem it needlessly confusing and a distraction to a proper interpretation of the broad charge of the cross-complaint.

■ Against the motion, of course, the cross-complaint must be given its best con-

struction. Thus viewed, as I read the document, Trans-Pacific fundamentally and essentially charges the defendants with having unlawfully combined, conspired, attempted to monopolize, and with unlawfully having monopolized the transportation commerce between the islands of the Territory. Upon this charge Trans-Pacific elaborates by describing acts and actions of defendants performed or taken in furtherance of the alleged unlawful purpose.

Of necessity Trans-Pacific of course must be deemed to understand the fact that Hawaiian, as a certificated carrier, has a limited monopoly of regular air transportation in the Territory by reason of being to date the only certificated air carrier in Hawaii. Trans-Pacific's principal charge it seems to me must be taken to mean, as the Board suggests, that the defendants have used their position of dominance and power even if legally acquired in a manner violative of the anti-trust laws and have suppressed free competition from such sources as Trans-Pacific to which the Board gave the right to compete in a narrow area as an irregular air carrier.

Such being the essence of the cross-complaint, upon the strength of the Georgia case, I am not at all convinced that either the Board or the Commission has authority from Congress to deal with such a charge.

Traditionally and by command of the anti-trust statutes jurisdiction of such a charge rests with the courts. I see nothing in either the Shipping Act or the Civil Aeronautics Act which alters this view. See Georgia case at page 456 et seq. of 324 U. S., 65 S.Ct. 716, 89 L.Ed. 1051.

Yet though it be said that powers granted by the Shipping Act and the Civil Aeronautics Act be broader than those granted the Interstate Commerce Commission and consequently the Georgia case is not controlling—questionable as this assumption be—I still do not deem this to be factually the type of case to which the primary jurisdiction rule has feasible application because:

1. The Commission is wholly lacking in effective power, for Hawaiian is not a person subject to the Shipping Act.

2. The Board, too, is not equipped with adequate power to handle the problem as

(a) Inter-Island acquired control of Hawaiian prior to the Civil Aeronautics Act and § 408 thereof is not retroactive;

(b) A charge of monopoly encompasses more than unfair methods of competition, so § 411 of the Civil Aeronautics Act is not large enough to handle the charge. And further, the Board could not order Inter-Island to dispose of its control of Hawaiian as it legally acquired it. The Board could not even reach Inter-Island. To say as defendants do that it could threaten Hawaiian wth suspension of its certificate unless Inter-Island did what the Board might say should be done, does not impress me as either plausible or practical. Agencies no more than courts waste their efforts on useles orders. If the threat should be executed its lawfulness would be litigated while the public stood stranded.

(c) Under §§ 7 and 11 of the Clayton Act, the Board by virtue of § 1107(g) of its Act could as a matter of power reach Inter-Island and if need be order it to divest itself of control of Hawaiian. But Trans-Pacific's complaint does not rest solely upon § 7 of the Clayton Act. And in terms of § 7, Inter-Island did not "acquire" control of an existing carrier. It created Hawaiian as its subsidiary, whereas with the sanction of the third paragraph of § 7 Inter-Island could well have engaged in 1929 and later in air transportation under its own name. So it is reasonable to suppose that forming Hawaiian did not substantially lessen competition, as indeed prior to Hawaiian's entering the air transportation field in the Territory there was no competition to suppress.

So it is for the reasons indicated, and with considerable reliance upon the Georgia case, that the motion to dismiss because of the doctrine of primary jurisdiction is denied.

Let it be understood, however, that the Court reserves the right to refer to the appropriate administrative agency questions involving rates, all-expense tour agreements or any other specific if it develops later to be advisable.

Settle order upon notice.