## S. S. W., Inc. v. AIR TRANSPORT ASS'N OF AMERICA et al.

### No. 1332–49.

United States District Court
District of Columbia.

May 31, 1950.

Warren E. Miller, John F. Clagett, Harold L. Schilz, John J. Klak and Thomas J. Kehoe, all of Washington, D. C., for plaintiff.

S. G. Tipton, of Washington, D.C., for defendant Air Transport Ass'n of America and Air Traffic Conference of America.

Howard C. Westwood and Ernest W. Jeness, of Washington, D. C., for defendant American Airlines.

Whiteford, Hart, Carmody & Wilson, Jo V. Morgan, Jr., of Washington, D. C., for defendant Braniff Airways, Inc.

Robert B. Hankins, of Washington, D. C., for defendant Capital Airlines, Inc.

Stanley Gewirtz and James M. Landis, of Washington, D. C., for defendant Colonial Airlines, Inc.

Herman F. Scheurer, Jr., and C. Edward Leasure, of Washington, D. C., for defendants Continental Air Lines, Inc. and Northwest Airlines, Inc.

Llewellyn C. Thomas, of Washington, D. C., for defendant Eastern Airlines, Inc.

Henry J. Friendly, of New York City, and James G. Johnson, of Washington, D. C., for defendant Pan American Airways, Inc.

Leonard P. Moore, of New York City, and William Caverly, of Washington, D. C., for defendant Transcontinental and Western Air, Inc.

James Francis Reilly, of Washington, D. C., for defendant United Air Lines.

MATTHEWS, District Judge.

This is an action instituted by plaintiff, a Delaware corporation, having its principal place of business in Concord, Contra Costa County, California, alleging violations of the Sherman[1] and Clayton[2] Acts, in which it seeks to recover from the defendants damages allegedly suffered by plaintiff, and the issuance of an injunction restraining defendants from further violations of the said Acts.

Plaintiff alleges that since August 6, 1946 it has engaged in a number of different forms of air-borne trade and commerce, conducting its business under a non-scheduled air carrier operating certificate issued by the Civil Aeronautics Authority[3], which has classified the plaintiff as a common carrier of freight and passengers.

Plaintiff charges, with more or less particularity, that the defendants, co-conspirators, and others have " * * * knowingly and wrongfully made and entered into contracts, understandings and agreements and have engaged, knowingly and continuously, in a wrongful and unlawful combination and conspiracy to directly and unreasonably restrain, and combination and conspiracy to monopolize, the airborne transportation, trade and commerce of the United States, and have knowingly and wrongfully attempted to monopolize the said trade and commerce, including trade and commerce therein of and within the District of Columbia, by injuring, suppress-

ing, and restricting competition therein and by controlling and fixing the channels and methods through which the prices, terms and conditions of air-borne travel and trade and commerce is carried on in interstate and foreign commerce and as to the trade and commerce therein of and within the District of Columbia; and in accordance with the terms of said combinations and conspiracies, and pursuant to the means and methods (thereinafter set forth) used to effectuate said combinations and conspiracies."

The defendants have moved to dismiss principally on the ground that the complaint raises administrative problems and, hence, is subject to the primary jurisdiction of the Civil Aeronautics Board. Plaintiff contends that this is not a case for the invocation of the primary jurisdiction doctrine since the Board has no authority to enjoin the alleged illegal practices charged and no authority to award damages or reparations.

While some cases require prior administrative adjudication, others permit original resort to the courts. It is said the answer depends upon "the character of the controverted question and the nature of the enquiry necessary for its solution." Great Northern Ry. Co. v. Merchants' Elevator Co., 259 U.S. 285, 291, 42 S.Ct. 477, 479, 66 L.Ed. 943. The Supreme Court has pointed out the line of demarcation many times. The line lies between controversies which involve issues of law and those which involve issues essentially of fact or call for the exercise of administrative discretion. See Great Northern Ry. case, supra, 259 U.S. at page 295, 42 S.Ct. 477.

Examining the complaint in this case we find the plaintiff alleges that the defendants, the co-conspirators and others have unlawfully combined and conspired, inter alia, to hinder and prevent it from obtaining the services of numerous ticket agencies or travel bureaus throughout the nation; to discredit and disparage it in the eyes of the

1. 26 Stat. 209 as amended, 15 U.S.C.A. §§ 1-7.

2. 38 Stat. 730 as amended, 15 U.S.C.A. §§ 12-27.

3. The functions of the Authority were transferred to the Board by Reorganization Plan No. IV, effective June 30, 1940, 54 Stat. 1235, 5 U.S.C.A. § 133t note.

public by the use of false and misleading statements; to eliminate and prevent competition for air carrier passenger and freight transportation; to offer transportation at cut prices until competition was eliminated; to obtain from gasoline and oil suppliers large quantity discounts which were not available to plaintiff; and, to cause refusal and delay to it of vital maintenance and other services at airports.

In the light of the foregoing, the "character of the controverted question" is not difficult of determination. It was these very evils, among others, that the Civil Aeronautics Act, 49 U.S.C.A. § 401 et seq., was passed to correct[4], and in doing so the Congress gave to the Board very broad powers over the industry.[5]

▮ It would appear, therefore, that United States Navigation Co., Inc., v. Cunard Steamship Co., 284 U.S. 474, 52 S.Ct. 247, 76 L.Ed. 408, is completely dispositive of the case here. There the court unanimously held that a private suit to enjoin an alleged combination in restraint of trade could not be maintained since the combination alleged was an agreement subject to the primary jurisdiction of the Shipping Board under Sec. 15 of the Shipping Act[6]. Furthermore, the Civil Aeronautics Act gives to the Civil Aeronautics Board far broader powers than the Congress saw fit to vest in the Shipping Board.

The allegations of the present complaint, considering them to be true for the purpose of the Motions to Dismiss, clearly present problems which involve expert knowledge of multitudinous detail of an intricate nature in a technical field. The Civil Aeronautics Board (and its predecessor the Civil Aeronautics Authority) has been in existence nearly twelve years and is peculiarly adapted, by reason of its experience and expert personnel, to deal with the matters herein complained of. The plaintiff complains, however, that the Board is dominated by the defendants and their alleged co-conspirators. The answer to that is that the Act gives ample opportunity for judicial review of the actions of the Board, if it proceeds arbitrarily or capriciously.[7]

▮ The Court has carefully considered whether this case should be held in abeyance until the Board has made its determination, in accordance with the hold-

4. "The consequences of the existing lack of economic controls over the industry are serious in that America's air transport industry faces a financial crisis. The airlines are desperately in need of sound financing on a business basis and they desperately need a rational means for eliminating waste and fostering economies under sound governmental supervision. * * * The industry has reached the point where unbridled and unregulated competition is a public menace. * * * Permanent long-term legislation covering the economic phases of the industry is required to make possible the carrying out of a healthy long-range planning on the part of both management and of government, and to avoid rate war cut-throat devices, and destructive and wasteful practices of which there have been disturbing signs." Congressman Randolph, 83 Cong.Rec. 6507, May 9, 1938.

5. "(a) The encouragement and development of an air-transportation system properly adapted to the present and future needs of the foreign and domestic commerce of the United States, of the Postal Service, and of the national defense; (b) The regulation of air transportation in such manner as to recognize and preserve the inherent advantages of, assure the highest degree of safety in, and foster sound economic conditions in, such transportation, and to improve the relations between, and coordinate transportation by, air carriers; (c) The promotion of adequate, economical, and efficient service by air carriers at reasonable charges, without unjust discriminations, undue preferences or advantages, or unfair or destructive competitive practices; (d) Competition to the extent necessary to assure the sound development of an air-transportation system properly adapted to the needs of the foreign and domestic commerce of the United States, of the Postal Service, and of the national defense; (e) The regulation of air commerce in such manner as to best promote its development and safety; and (f) The encouragement and development of civil aeronautics." 49 U.S.C.A. § 402.

6. 46 U.S.C.A. § 814.

7. 49 U.S.C.A. § 646.

272

ing of the Supreme Court in the case of General American Tank Corp. v. El Dorado Terminal Co., 308 U.S. 422[3], 60 S.Ct. 325, 331, 84 L.Ed. 361, or the Motions to Dismiss granted at this time. The Court has concluded that the stay rule enunciated therein is inapplicable here, for the reason that in the El Dorado case the primary jurisdiction point was not advanced until after a trial on the merits, while it has been raised and vigorously urged *in limini* in the case at bar. See Armour & Co. v. Alton R. Co., 7 Cir., 111 F.2d 913, affirmed 312 U.S. 195, 61 S.Ct. 498, 85 L.Ed. 771.

The Motions to Dismiss are, therefore, hereby granted and counsel will present an appropriate Order.

In view of this holding, rulings on the other motions are unnecessary.

8. There the Court said: "When it appeared in the course of the litigation that an administrative problem * * * was involved, the court should have stayed its hand. * * * There should not be a dismissal, but * * * the cause should be held pending the conclusion of an appropriate administrative proceeding."