**DISTRICT COUNCIL OF the PORT OF PHILADELPHIA, INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, et al.**

**v.**

**SEATRAIN LINES, INC., et al.**

**Civ. A. No. 73-812.**

United States District Court,
E. D. Pennsylvania.

Nov. 12, 1973.

Abraham Freedman, Philadelphia, Pa., for plaintiffs.

Peter Hearn, F. Hasting Griffin, Edward W. Mullinix, Patrick T. Ryan, Philadelphia, Pa., for defendants.

. MEMORANDUM OPINION

WEINER, District Judge.

Before the Court in the above captioned action are the following motions:

(a) Plaintiffs' motion to Maintain Action as a Class Action. Fed.R.Civ.P. 23.

(b) Defendants' motion to dismiss filed pursuant to Rule 12(b) or in the alternative to stay all claims, and

(c) Petition of the Federal Maritime Commission (FMC) for leave to intervene as a party defendant. Rule 24(a).

The instant case is predicated upon alleged violation of the Shipping Act, 1916, 46 U.S.C. § 801 et seq.; Merchant Marine Act of 1920, as amended, 46 U.S.C. § 867 and of the Sherman Anti-Trust Act §§ 1, 2, 15 U.S.C. §§ 1, 2; The Clayton Act §§ 1, 2, as amended, 15 U.S.C. §§ 12, 13 and The Robinson-Patman Act, §§ 1, 3, 15 U.S.C. §§ 13, 13a.

Initially, we deem it advisable to concentrate on the defendants' motion to dismiss or stay. Here, the area of controversy is clearly delineated. The defendants contend that the Maritime Commission has primary jurisdiction over the cause of action and also asserts plaintiffs' lack of standing to sue under the Sherman, Clayton and Robinson-Patman Acts. The plaintiffs, acknowledging that FMC has the duty and power to examine and approve or disapprove practices covered by the Shipping Act, argue that the existence of this administrative power, under the alleged claims made in this action, will not deprive or oust this Court of jurisdiction or in the alternative that Federal Court jurisdiction is concurrent with that of the administrative agency. In order to bring into focus the issues stated, it is first necessary to review the relevant allegations as written in the complaint. Briefly summarized, the complaint alleges an unlawful agreement among the defendants to divert cargo from the Port of Philadelphia to other ports of exit and entry by transporting cargo inland at their own expense. Plaintiffs also allege that said actions are detrimental to commerce, discriminatory to the Port of Philadelphia and the individuals dependent upon it for livelihood and business. In addition the plaintiffs charge a conspiracy in restraint of foreign commerce, to discriminate between ports, to

substantially lessen and destroy competition, to create a monopoly in commerce, and, in furtherance of such conspiracy and discrimination, to grant special favors, prices, services, allowances, etc. in violation of the anti-trust and price discrimination laws.[1]

■ The alleged "Shipping Act" violations present a fact situation similar in all material respects to that present in Delaware River Port Authority v. United States Lines, Inc., 331 F. Supp. 441 (E.D.Pa.1971). It is only in the relief sought that the *Delaware* case is distinguishable from the instant action.[2] The root question of primary jurisdiction is not influenced by the nature of the requested relief. In the *Delaware River Port Authority* case this Court, speaking through Judge Van-Artsdalen, concluded that the determination of whether or not the ocean carriers' practice constituted a violation of the provisions of the "Shipping Act" is to be adjudicated by the FMC "as the competent administrative board to determine if the conduct alleged . . . is in fact illegal" 331 F.Supp. at 447. We see nothing in the circumstances of this suit to distinguish it from the force and effect of Judge VanArtsdalen's decision. We believe that our colleague's observation that: "This Court is not permitted to adjudicate the ultimate issues in this case" id. at 447, is applicable to the issue prevalent in the matter *sub judice*.

Plaintiffs have cited a number of cases which they claim support their contention. We have examined the cases and do not find them as persuasive as plaintiffs do. We are impelled to reject the plaintiffs' assertion that the defendants' conduct was not "arguably lawful". It is for the Commission to determine whether the defendants' activities violated the provisions of the "Shipping Act". Port of New York Authority v. Federal Maritime Commission, 429 F.2d 663 (5th Cir. 1970), cert. denied, 401 U.S. 909, 91 S.Ct. 867, 27 L.Ed.2d 806 (1971); United States Navigation Co., Inc. v. Cunard Steamship Co., Ltd., 284 U.S. 474, 52 S.Ct. 247, 76 L.Ed. 408 (1932).

■ Turning now to a consideration of the issues associated with alleged violations of the antitrust laws we are persuaded that case law precedents compel a conclusion that the defendants' position is sound. Here, again, the area of conflict is a narrow one. The defendants argue that the antitrust claims should be stayed pending review by the FMC. The plaintiffs contend that we have concurrent jurisdiction and should independently proceed to a determination of whether the defendants violated the antitrust acts. In Carnation Co. v. Pacific Westbound Conference, 383 U.S. 213, 86 S.Ct. 781, 15 L.Ed.2d 709 (1966) we were informed ". . . that courts must refrain from imposing antitrust sanctions for activities of debatable legality under the Shipping Acts in order to avoid the possibility of conflict between the Courts and the Commission" id. at 220, 86 S.Ct. at 786. The plaintiffs dispute the defendants' contention that their activities are of debatable legality. To justify their premise the defendants maintain that there are circumstances, which if established, would require a finding that the defendants practices conformed to the provisions of the Shipping Act and hence exempted them from liability for any violation of antitrust laws. Specifically, the defendants suggest that their activities were implementations of an existing approved agreement and therefore immune from antitrust penalties. Section 15, Shipping Act, supra. Cf. Hughes Tool Co. v. Transworld Air Lines, Inc., 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973); Ricci v. Chicago Mercantile Exchange, 409 U.S. 289, 93 S.Ct. 573, 34 L.Ed.2d 525 (1973); Federal Maritime Commission v. Seatrain Lines, Inc., 411 U.S. 726, 93 S.Ct. 1773, 36 L.Ed.2d 620 (1973). Complementing the above the

---

1. P. 2—Plaintiffs' memoranda contrary to motion to dismiss.

2. *Delaware River* involved injunctive proceeding whereas in the instant case the plaintiffs seek compensatory damages.

defendants also argue that the challenged practices may be held to be non-violative of the antitrust law. We believe the resolution of the contentions relied upon by the defendants may be critical to a determination of the validity of the antitrust claims and unquestionably raise issues of debatable legality.

In United States v. Far East Conference, 94 F.Supp. 900 (D.C.N.J.1951), the government instituted proceedings seeking to enjoin violations of the Sherman Act predicated upon violations of the Shipping Act. Alleging that the FMC had exclusive primary jurisdiction of the controversy, the defendants moved to dismiss. The motion was denied. Upon appeal, sub nom Far East Conference v. United States, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952), the Supreme Court reversed and ordered dismissal of the proceedings brought before the District Court and in the course of its opinion stated:

"The [Shipping] act is restrictive in its operation upon some of the activities of common carriers by water, and permissive in respect of others. Their business involves questions of an exceptional character, the solution of which may call for the exercise of a high degree of expert and technical knowledge. Whether a given agreement among such carriers should be held to contravene the act may depend upon a consideration of economic relations, of facts peculiar to the business or its history, of competitive conditions in respect of the shipping of foreign countries, and of other relevant circumstances, generally unfamiliar to a judicial tribunal, but well understood by an administrative body especially trained and experienced in the intricate and technical facts and usages of the shipping trade; and with which that body, consequently, is better able to deal. Compare Chicago Board of Trade v. United States, 246 U.S. 231, 238, 38 S.Ct. 242, 62 L.Ed.

683; United States v. Hamburgh-American S.S. Line, D.C., 216 F. 971.

"A comparison of the enumeration of wrongs charged in the bill with the provisions of the sections of the Shipping Act above outlined conclusively shows, without going into detail, that the allegations either constitute direct and basic charges of violations of these provisions or are so interrelated with such charges as to be in effect a component part of them; and the remedy is that afforded by the Shipping Act, which to that extent supersedes the antitrust laws. Compare Keogh v. Chicago & N.W. Ry. Co., *supra*, 260 U.S. 156, 43 S.Ct. 47, 67 L. Ed. 183, at p. 162. The matter, therefore, is within the exclusive preliminary jurisdiction of the Shipping Board. The scope and evident purpose of the Shipping Act, as in the case of the Interstate Commerce Act, are demonstrative of this conclusion." 284 U.S. 474, 485, 52 S.Ct. at 250.

However, Carnation Co. v. Pacific Westbound Conference, supra, points out the distinction to be drawn between suits seeking injunctive relief as opposed to monetary claims grounded upon antitrust claims. In *Carnation* the Court observed:

". . . However, the *Far East* opinion indicates that the Court only chose to dismiss that action rather than to stay the proceedings pending Commission action because it found that dismissal would not prejudice the plaintiff's right to obtain antitrust relief at the appropriate time. That plaintiff was seeking injunctive relief from continuing conduct. Such a suit could easily be reinstituted if and when the Commission determined that the activities in question violated the Shipping Act. But a treble-damage action for past conduct cannot be easily reinstituted at a later time. Such claims are subject to the Statute of Limitations and are likely to be barred by the time the Commission acts. Therefore, we believe that the

**1282**

Court of Appeals should have stayed the action instead of dismissing it."

We are of the opinion that this decision mandates a stay of the antitrust count pending the outcome of the FMC proceedings.