**INDUSTRIAL COMMUNICATIONS SYSTEMS, INC., and Intrastate Radio Telephone, Inc., of Los Angeles, Plaintiffs-Appellants,**

v.

**PACIFIC TELEPHONE & TELEGRAPH COMPANY and General Telephone Company of California, Defendants-Appellees.**

No. 73-1032.

United States Court of Appeals, Ninth Circuit.

Oct. 4, 1974.

James G. Rourke, of Rourke & Holbrook, Santa Ana, Cal., for plaintiffs-appellants.

Anthonie M. Voogd, of Lawler, Felix & Hall, Charles W. Bender, of O'Melveny & Myers, Los Angeles, Cal., for defendants-appellees.

Before CARTER and HUFSTEDLER, Circuit Judges, and SCHNACKE, * District Judge.

## OPINION

JAMES M. CARTER, Circuit Judge.

This is an appeal from the Order of the district court, dismissing the complaint of appellants Industrial Communications Systems, Inc. ("Industrial") and Intrastate Radio Telephone, Inc. of Los Angeles ("Radio") on the ground that it failed to present a justiciable case or controversy. Appellees Pacific Telephone and Telegraph Company ("Pacific") and General Telephone Company of California ("General") seek to sustain the Order of dismissal on three grounds: 1) non-justiciability; 2) the complaint failed to state a claim upon which relief could be granted; and 3) the California Public Utilities Commission ("PUC") has primary jurisdiction of the dispute. Although we conclude that the case was justiciable and the complaint stated a claim upon which relief could be granted, the federal court case should have been stayed pending the outcome of the PUC proceedings under the doctrine of primary jurisdiction. We reverse and remand with instructions that the district court stay this case pending the outcome of the PUC proceedings.

## FACTS

Industrial and Radio are engaged in the one-way signaling business in the Los Angeles area. One-way signaling is a means for informing a person while he is away from his telephone that someone is attempting to contact him. A subscriber to a signaling service is assigned a number and a small radio receiver that he carries with him. To contact the subscriber, one telephones the signaling utility, waits for a tone, and then dials

---

* Honorable Robert H. Schnacke, United States District Judge, Northern District of California, sitting by designation.

the subscriber's number. The utility's transmitter emits a radio beam keyed to that subscriber's receiver and the receiver emits a "beep" tone. Thus informed that someone is attempting to contact him, the subscriber telephones a predetermined contact point, such as his office, and obtains the message. The basic technical equipment required to provide one-way radio signaling service is the radio transmitter and the means to connect it with the telephone network.

Industrial and Radio pay to Pacific and General a monthly charge for this dial interconnection under contracts terminable by either party on thirty days' notice. Industrial and Radio compete with each other for one-way signaling service subscribers and are also subject to such competition from other radio common carriers in the Los Angeles area.

On November 1, 1971 the FCC granted construction permits to both Pacific and General to build radio transmitters to be used for providing one-way radio signaling service in the Los Angeles area. These permits authorized the construction by both Pacific and General of facilities to "be operated in coordination" with one another on the same frequency.

On June 1 and June 2, 1972, respectively, General and Pacific each filed an "Advice Letter" with the PUC. These Advice Letters presented revised tariff sheets to the PUC containing information and rates covering the proposed institution of one-way signaling service in Los Angeles. On June 23, 1972, General and Pacific each applied to the FCC for a radio license to operate the transmitters they had built pursuant to the construction permits issued on November 1, 1971.

On June 21, 1972, Industrial requested the FCC to withhold any action on the radio license applications of General and Pacific, and on June 26, 1972, Industrial and Radio filed a complaint with the PUC challenging the tariffs filed with Pacific's and General's Advice Letters.

The complaint alleged in pertinent part that the rates and conditions of service General and Pacific sought to establish were unfair, anticompetitive, and constituted an unlawful contract, combination and conspiracy in restraint of trade. It was further alleged that Industrial and Radio would suffer prompt and irreparable injury if the proposed tariffs were permitted to become effective. The following day, the PUC suspended the tariffs proposed by General and Pacific and commenced an investigation to determine the reasonableness and lawfulness of the tariffs.

The complaint proceeding and the PUC investigation were consolidated and, on November 10, 1972, a full PUC hearing was commenced, with one of the issues to be determined stated as follows:

"Would it be in the public interest to permit the proposed tariffs filed by Pacific and General to become effective, public interest being deemed to include but not limited to relevant consideration of alleged anti-competitive impact of such action."

On December 1, 1972, the hearing examiner adjourned the hearings to a future date to be set by the Commission.

Industrial and Radio also filed their complaint in the district court, alleging that Pacific and General were combining, conspiring, and threatening to commit violations of the antitrust laws by proposing to enter the one-way radio signaling business in Los Angeles. The complaint further alleged that their one-way signaling businesses would suffer serious and irreparable injury unless General and Pacific were enjoined from entering the market.

Upon motion by Pacific and General, the district court dismissed the complaint on the ground that, since the PUC had not yet approved the defendants' tariffs nor had the FCC granted the defendants the requisite radio licenses, "[t]he dispute as presented is, therefore, hypothetical and abstract. It lacks sufficient immediacy and reality to war-

rant, at this time, possible disharmony between this Court and the agencies charged with the primary regulation of this area of competition." This appeal ensued.

## I.

### THE CASE IS JUSTICIABLE

■ The United States Constitution limits the jurisdiction of the federal courts to the adjudication of "cases or controversies." U.S.Const., Art. III, § 2. This limitation bars federal courts from giving advisory opinions or from considering hypothetical cases. *See* Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240–241, 57 S.Ct. 461, 81 L.Ed. 617 (1937). In the usual case, then, acts which merely threaten injury to one or several parties will not support the finding of a case or controversy sufficient to give the courts jurisdiction.

However, the authorizing statute in this case, Section 16 of the Clayton Act, 15 U.S.C. § 26, provides aggrieved parties with a suit for "injunctive relief, in any court of the United States having jurisdiction over the parties, against *threatened loss or damage by a violation of the antitrust laws.*" (Emphasis added.) The "relief against threatened conduct that will cause loss or damage" is to be granted "by courts of equity, under the rules governing such proceedings."

The Supreme Court, interpreting Section 16 of the Clayton Act, has specifically held that a party need not prove the fact of injury in order to be entitled to injunctive relief against parties conspiring to violate the antitrust laws. Zenith Corp. v. Hazeltine, 395 U. S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969). Rather, Section 16 "authorizes injunctive relief upon the demonstration of 'threatened' injury. That remedy is characteristically available even though the plaintiff has not yet suffered actual injury . . . he need only demonstrate a significant threat of injury from an impending violation of the antitrust laws . . . ." *Id.* at 130, 89 S.Ct. at 1580 (citations and footnotes omitted).

■ Industrial and Radio have properly alleged a combination by Pacific and General to enter the one-way radio signalling business in Los Angeles, in violation of the antitrust laws. They have also alleged that such entry into the market would cause them serious and irreparable harm. Because the dismissal came at the pleading stage of the proceedings, they have had no opportunity to prove the acts threatening violation of the antitrust laws.[1] We find, and Zenith Corp. v. Hazeltine, *supra*, so requires, that the plaintiffs have demonstrated "a significant threat of injury from an impending violation of the antitrust laws." The dispute is therefore justiciable.

■ Our finding that the plaintiffs have properly alleged an impending violation of the antitrust laws which, if proved, would entitle them to equitable relief, likewise mandates the conclusion that the complaint states a claim upon which relief can be granted. Whether the violation alleged can be proved is not relevant at this stage of the proceedings.

## II.

### THE PUC HAS PRIMARY JURISDICTION OF THE DISPUTE

Although the district court dismissed the complaint as non-justiciable, it also noted that determination of the dispute could result in "disharmony between this Court and the agencies charged with the primary regulation of this area of competition." Pacific and General contend on appeal, as they did below, that if the dismissal was erroneous, the district

---

1. Plaintiffs have indicated that they expect to show, *inter alia*, that Pacific and General have adopted an agreement whereby "Neither company will file for personal signalling system construction permits within their mutual Southern California Region unless in conformance with the joint plans or defer notifying the other company of its intention to proceed alone." Appellant's Opening Brief, at 5 n. 3.

court proceedings should at least have been stayed pending proceedings by the PUC which has primary jurisdiction of this dispute. We agree.

There are in reality two prongs to the contention that the PUC or FCC, not the federal courts, has jurisdiction over this case. First, Pacific and General contend that the extensive regulation of telephone companies by the FCC under the Federal Communications Act, 47 U.S.C. § 151 et seq., precludes *any* antitrust actions against them. We reject this contention, both because our conclusion that the PUC has primary jurisdiction warranting a stay in this case renders a broader holding superfluous, and because the relevant case law would appear to indicate that telephone companies are not unconditionally immune from antitrust actions. *See, e. g.*, Otter Tail Power Co. v. United States, 410 U.S. 366, 372, 93 S.Ct. 1022, 35 L.Ed.2d 359 (1973); United States v. Philadelphia National Bank, 374 U.S. 321, 350–351, 83 S.Ct. 1715, 1735, 10 L.Ed.2d 915 (1963) ("Repeals of the antitrust laws by implication from a regulatory statute are strongly disfavored, and have only been found in cases of plain repugnancy between the antitrust and regulatory provisions"); International Tel. & Tel. Co. v. General Tel. Co., 351 F.Supp. 1153, 1202–1203 (D.Hawaii 1972). *But cf*. United States v. Radio Corporation of America, 358 U.S. 334, 349 n. 17, 79 S.Ct. 457, 3 L.Ed.2d 354 (1959).

In *Radio Corporation of America, supra*, at 349 n. 17, 79 S.Ct. at 466, the Court noted that "Congress has provided that certain actions of telephone and telegraph companies may be exempted from the antitrust laws by the Commission, [47 U.S.C.] § 221(a) and § 222(c)(1)." These exemptions, however, have been specifically and narrowly drawn, and pertain solely to consolidations and mergers. They do not authorize or suggest a blanket exemption from the antitrust laws with respect to the regulation of rates, practices, or services.

■ The second prong of appellees' primary jurisdiction argument is that under that doctrine a court *should* stay proceedings which are properly within the jurisdiction of, and are in fact presently under consideration by, an agency with extensive regulatory powers over the subject matter and parties involved. We agree and conclude that the reasons for applying the doctrine of primary jurisdiction are applicable to this case.

■ Whether or not the doctrine of primary jurisdiction applies depends on the extent and amount of regulatory powers vested in the governmental agencies involved. In instances where the companies or activities were fully regulated, the doctrine of primary jurisdiction applied. *See* Far East Conference v. United States, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952); *Radio Corporation of America, supra*, 358 U.S. at 346–347, 79 S.Ct. 457, 3 L.Ed.2d 354; United States Navigation Co. v. Cunard S. S. Co., 284 U.S. 474, 483–485, 52 S.Ct. 247, 76 L.Ed. 408 (1932). At the other end of the spectrum are those cases concerning the broadcasting industry, where the lack of statutorily mandated control rendered the doctrine inapplicable. *See Radio Corporation of America, supra*, 358 U.S. at 348–349, 79 S.Ct. at 466 (Radio and television broadcasters "are not included in the definition of common carriers . . . as are telephone and telegraph companies. Thus, the extensive controls . . . of the Communications Act . . . do not apply"); Federal Communications Comm'n v. Sanders Bros. Radio Station, 309 U.S. 470, 474, 60 S.Ct. 693, 84 L.Ed. 869 (1940).

Because the jurisdiction of the FCC is limited to "interstate and foreign communication by wire or radio" (47 U.S.C. § 152(a)), regulation of wire or radio communication between points in the same state is reserved to the appropriate state commission (47 U.S.C. § 153(e)). Under this dual regulatory system, the FCC exercises regulatory authority over the initial issuance of radio licenses but defers questions regarding rates, "eco-

nomic impact" and "need for service" to the state agency, here the PUC.

"Telephone corporations" are comprehensively regulated under the California scheme. No telephone corporation can begin construction of a line, plant, or system in an area unless it has first obtained from the PUC a certificate of public convenience and necessity covering that area. Calif.Pub.Util.Code § 1001. If the PUC finds that any practices, facilities, equipment, or service of a telephone corporation are unreasonable, inadequate, or insufficient, it is empowered to order the company to furnish or construct whatever facilities, equipment or service is needed. Calif.Pub. Util.Code § 761. The PUC's regulatory authority over rates, practices, and services is likewise both pervasive and continuing. Calif.Pub.Util.Code §§ 455, 489, 728, 729. And, in addition to its extensive specifically enumerated powers, the PUC is vested with omnibus authority to do all things necessary to the exercise of its powers and jurisdiction over public utilities. Calif.Pub.Util.Code § 701.

■ For over a decade, the PUC has pervasively regulated all "elements which affect the relationship between a radio-telephone utility and the public," Kidd v. Poor, 64 Cal.PUC 237, 240 (1965), and "a consideration of . . . [antitrust questions] is an essential part of the Commission's function. . . . [T]he Commission must take into account the antitrust aspects of applications before it." Northern California Power Agency v. PUC, 5 Cal. 3d 370, 379, 486 P.2d 1218, 1224, 96 Cal.Rptr. 18, 24 (1971).

Where, as here, a regulatory agency possesses such extensive authority and control over a particular subject matter, and where consideration of the same subject matter is sought before that agency and the courts, the possibility of a judicial-administrative conflict should be avoided. Carter v. American Tel. & Tel. Co., 365 F.2d 486, 495 (5 Cir. 1966), cert. denied 385 U.S. 1008, 87 S.Ct. 714, 17 L.Ed.2d 546 (1967) ("the occasion for facing such a possibility ought not to be forced until it is inescapably necessary").

Another reason for deferring to the PUC is the need to obtain the benefit of that agency's expertise in ascertaining, interpreting and distilling the facts and circumstances underlying the legal issues. Where an agency is charged with responsibility for regulating a complex industry, it is much better equipped than the courts, "by specialization, by insight gained through experience, and by more flexible procedure," to gather the relevant facts that underlie a particular claim involving that industry. See Far East Conference v. United States, 342 U.S. 570, 575, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952). In the present case, the PUC's review of the nature of the market, the quality of present radiotelephone utility service, the competitive impact of defendant's entry into the market, and various other issues would be an invaluable aid to the district court. Cf. MCI Communications Corp. v. American Tel. & Tel. Co., 496 F.2d 214, 223–224 (3 Cir. 1974).

Finally, adjudication of this case would necessarily require determination of a key threshold issue which is present in most antitrust cases involving regulated industries—whether the regulatory policy in the particular case can be reconciled with application of the antitrust laws, and if not, whether the scope and nature of the regulatory control exercised in the particular case precludes application of the antitrust laws. See Carter v. American Tel. & Tel. Co., supra, 365 F.2d at 493–497 "[T]he problem is not one of application of the antitrust laws but is one of accommodation of the antitrust policy to the regulatory policy. . . . The courts are obviously well equipped to make initial decisions involving application of the anti-

trust policy. But, before the particular regulatory agency has defined the particular regulatory policy in the particular case, the courts are not well equipped to make initial decisions involving accommodation of the antitrust policy to the regulatory policy." 3 Davis, Administrative Law § 19.05, at 25 (1958 ed.). *See MCI Communications Corp., supra,* at 222.

In a case involving facts virtually identical to the facts in the present case, the district court stayed the federal action pending determination by the FCC,

> "after giving due consideration to the likely competitive effects whether granting [defendant's] application will serve 'the public interest, convenience, and necessity.' If the FCC should deny [defendant's] application, the instant Complaint will be dismissed as moot. If the FCC should grant [defendant's] application, in whatever form, then plaintiff can renew its request to this Court for immediate injunctive and/or declaratory relief." Radio Broadcasting Co. v. Bell Tel. Co. of Pa., 325 F.Supp. 168, 170 (E.D.Pa.1971). *See also* Carter v. American Tel. & Tel. Co., *supra.*

We endorse this procedure with respect to the present case.[2]

Therefore, we reverse the order dismissing the complaint in this action and remand with instructions to stay the action pending the final outcome of the PUC proceedings and then to proceed in a manner consistent with this opinion.

2. The contention by Industrial and Radio that because neither the PUC nor the FCC has the authority to determine whether Pacific's and General's activities will violate the antitrust laws, a stay of the federal action is inappropriate, is without merit. In *Carter, supra,* the court stated:

"That the ultimate decision of the FCC may not be an end to the matter is neither unexpected nor decisive. For the doctrine applies 'even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined.'

[The doctrine applies] 'even if the court thinks that the arrangement alleged to violate the antitrust laws cannot be legally approved by the agency' for 'the court should still allow the agency first to pass upon the question.'" 365 F.2d at 499 (citations omitted). *See* Southwestern Sugar & Molasses Co. v. River Terminals Co., 360 U.S. 411, 420, 79 S.Ct. 1210, 3 L.Ed. 2d 1334 (1959).

