**COLUMBIA STEAMSHIP COMPANY, INC., a corporation, Appellant,**

v.

**AMERICAN MAIL LINE, LTD., et al., Appellees.**

No. 72–2943.

United States Court of Appeals, Ninth Circuit.

Jan. 16, 1975.

Thomas M. Triplett (argued), and John L. Schwabe (argued), of Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland, Or., for appellant.

Warner W. Gardner (argued), of Shea & Gardner, Stuart J. Land (argued), of Arnold & Porter, Washington, D. C., for appellees.

Before KILKENNY, SNEED, Circuit Judges, and JAMESON,* District Judge.

## OPINION

SNEED, Circuit Judge:

Columbia Steamship Company, Inc., seeks to recover damages against American Mail Line, Ltd., and certain other shipping lines for alleged violations of (1) section 810 of the Merchant Marine Act of 1936, 46 U.S.C.A. § 1227; (2) section 601 of the same Act, 46 U.S.C.A. § 1171; (3) sections 15–18 of the Shipping Act of 1916, 46 U.S.C.A. §§ 814–817; and (4) sections 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1, 2. The trial court dismissed the complaint. We affirm but stay the mandate until there has been a final disposition of the appeal from the judgment in the consolidated civil actions 1576–72, American Maritime Association v. Peterson, Secretary of Commerce, and 1667–72, States Marine International v. Peterson, Secretary of Commerce, rendered by the United States District Court for the District of Columbia. Should the district court's judgment ultimately be affirmed, the mandate shall be issued forthwith. Should the district court's judgment ultimately not be affirmed, the mandate shall not be issued and the plaintiff's complaints will be reconsidered in light of the reasoning supporting the refusal to affirm.

In the proceedings below the trial court ordered the plaintiff to bring forth further evidence regarding the "conspir-

* Honorable William J. Jameson, United States Senior District Judge, District of Montana, sitting by designation.

acy issue," under section 1 of the Sherman Act. Shortly thereafter, the plaintiff amended its complaint to delete any claim based on section 1. Thereafter, the district court determined that the first issue to be tried was whether a stipulation of facts agreed to by the parties established a prima facie case that the defendants "engage[d] in any practice in concert with another carrier . . . which is unjustly discriminatory or unfair . . ." within the meaning of section 810 of the Merchant Marine Act of 1936. The stipulation is brief and is set out in full in the margin.[1]

In essence, the issue posed by this stipulation involves the interaction of legislation which requires that certain types of cargo move on United States flag vessels[2] and that portion of the Merchant Marine Act of 1936 which provides an operating differential subsidy when, *inter alia,* the operation of the vessel " . . . is required to meet foreign-flag competition and to promote the foreign commerce of the United States . . . ." Section 601, Merchant Marine Act of 1936, 46 U.S.C.A. § 1171(a). The plaintiff insists that subsidized carriers may not submit bids for the carriage of preference cargo shipped by the Department of Defense and the civilian agencies of the federal government which are "less than fully distributed costs before

1. Plaintiff and defendants stipulate that a separate determination of the following issue may be ordered by the Court:

Whether plaintiff will have established a prima facie case that defendants have conformed to an agreement with or engaged in any practice in concert with another carrier or carriers within the meaning of Section 810 of the Merchant Marine Act of 1936 (46 U.S.C. 1227), where its evidence on the point consists solely of the following facts to which defendants stipulate for the purpose of determining this preliminary issue: At all times pertinent:

1. Each defendant received the operating differential subsidies provided under the Merchant Marine Act of 1936 for the operation of liner services.

2. All cargo shipped by the Department of Defense and fifty per cent (50%) of the cargo shipped by the civilian agencies of the government was, with immaterial exceptions, limited by law to United States flag ships. A significant part of the cargo carried by defendants was within this category.

3. Department of Defense cargo and government civilian agency cargo not shipped under a conference rate was subject to competitive bidding. In submitting competitive bids for such cargos, each defendant was aware that its revenue would include both freight revenue and the operating differential subsidy, and was aware that other United States flag steamship companies, including the other defendants, were also receiving operating differential subsidies and were submitting competitive bids for cargo so limited by law, and was further aware that unsubsidized operators, including plaintiff, were also submitting bids for such cargo.

No defendant had knowledge of the actual bids submitted by any other defendant prior to any publishing thereof by the government. Since about the year 1966 each defendant became aware of each other defendant's bids subsequent to their publishing by the government and was aware that in the case of most defendants the revenues produced by said defendant's bids would be, in most instances, less than fully distributed costs before crediting the operating differential subsidy.[1]

4. Columbia Steamship Co. was an unsubsidized carrier whose vessels were of the break bulk variety. Defendants own and operate numerous break bulk vessels. 60% of the outbound cargo carried by break bulk vessels was military and civil agency cargo. Unsubsidized carriers of break bulk cargo, including plaintiff, were dependent upon carriage of military and civilian agency outbound cargo for their economic survival and each defendant was aware of this fact.[1]

5. The trade routes and the bids submitted with reference thereto by defendants and plaintiff in 1966 to 1971 were set forth in the MSTS Shipping Agreements and Rate Guides attached hereto.

Note 1. The facts set forth in the second and last sentence of Section 3 and the entirety of Section 4 are denied by each defendant but are stipulated to solely for the purpose of determining this segregated issue of law. Nothing stated in said sections shall be construed as an admission against interest or shall in any way be utilized as evidence in the trial or any other proceedings arising out of the subject matter of this litigation.

2. *E. g.,* Cargo Preference Act of 1904, 10 U.S.C.A. § 2631, (military cargo); section 901(b) of the Merchant Marine Act of 1936, 46 U.S.C.A. § 1241(b), (cargo owned or financed by U.S.).

crediting the operating differential subsidy." *See* paragraph 3 of Stipulation *n.* 1. To do so, asserts the plaintiff, while aware that other subsidized carriers also are doing so, amounts to engaging in a practice *in concert* with other carriers which is unfair and discriminatory with respect to unsubsidized carriers, such as the plaintiff, and constitutes a violation of section 810 of the Merchant Marine Act of 1936.

The district court on the basis of the stipulation held that the plaintiff had failed to establish a prima facie case for such a violation and dismissed the claim based thereon. The district court then turned to the plaintiff's other claims and directed that the plaintiff submit "its brief on whether the use of subsidy by defendants on defense and preference cargoes is unlawful and, if so, what remedies are available to it." Order 71–132, June 2, 1972. This was done and thereafter the district court held (1) that Title VI of the Merchant Marine Act of 1936, 46 U.S.C.A. §§ 1171–1182, does not prohibit the carriage of preference cargo by subsidized carriers; (2) that, because a large amount of preference cargo moves by rates set by conferences which are influenced by the rates of foreign flag carriers, Title VI does not require that all cargo on subsidized carriers be subject to foreign competition; (3) that section 16 of the Shipping Act of 1916 is inapplicable because it is directed at a carrier's discrimination against shippers and not at competitive activity among carriers and (4) that defendants did not violate section 2 of the Sherman Act because they constantly compete with one another.

Plaintiff appeals on the grounds that the trial court erred in holding (1) that a prima facie case of action in concert, within the meaning of section 810 of the Merchant Marine Act of 1936, 46 U.S. C.A. § 1227, was not established; (2) that there was no violation of Title VI of the Merchant Marine Act of 1938, 46 U.S.C.A. §§ 1171–1182; and (3) that there was no violation of section 2 of the Sherman Act without first affording the plaintiff an opportunity to develop a factual record in support of its allegations.

.I.

Although not relied upon by the plaintiff and quite understandably, not strongly argued by the defendants, we must determine at the outset whether the doctrine of primary jurisdiction requires that we reverse the dismissal of the complaint and remand with instructions to stay the action until the Maritime Subsidy Board and the Secretary of Commerce, possibly in conjunction with the Federal Maritime Commission, have had the opportunity to consider the issues raised by the plaintiff. To do so would constitute an application of the principle first stated in Texas & Pacific R. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907) and later refined in United States Navigation Co. v. Cunard S.S. Co., 284 U.S. 474, 52 S.Ct. 247, 76 L.Ed. 408 (1932); Far East Conference v. United States, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952); and Federal Maritime Board v. Isbrandtsen Co., 356 U.S. 481, 498–499, 78 S.Ct. 851, 2 L.Ed.2d 926 (1958). This court recently applied this doctrine in Industrial Communications Systems, Inc., et al. v. Pacific Telephone & Telegraph Co., 505 F.2d 152 (9th Cir. 1974), and there found it inappropriate for a court to work out an accommodation of antitrust and regulatory law without the benefit of the appropriate agency's interpretation of that regulatory law. *See* 3 Davis, Administrative Law § 19.05 (1958 ed.).

In considering the doctrine's application to the facts and posture of this case, we are confronted by a substantial difficulty. It consists of the fact that the plaintiff, together with other unsubsidized carriers, initiated a proceeding in 1969 before the Maritime Subsidy Board, Docket No. S–244, to consider the adoption of rules that would eliminate the alleged "double subsidy" which results from the receipt of operating differential subsidies while engaged in the carriage of substantial amounts of pref-

erence cargo. This proceeding resulted in the promulgation by the Maritime Subsidy Board of a final opinion and order in which the position was taken that ships receiving operating differential subsidies must carry at least 50 percent non-preference cargo. Both subsidized and unsubsidized carriers, not including the plaintiff here, challenged this rule of the Maritime Subsidy Board in the United States District Court for the District of Columbia. That court declared the rule invalid and held operating differential subsidies could not be limited because of the carriage of preference cargo. In doing so heavy reliance was placed upon Comptroller General Opinion D–159245, SRR10, 264 (1966) which reached a similar conclusion. This decision has been appealed to the Court of Appeals for the District of Columbia Circuit. States Maritime International (No. 74–1499) and American Maritime Association (No. 74–1502) v. Peterson, Secretary of Commerce.

■ The consequence is that to a degree the purpose of the primary jurisdiction doctrine already has been served. The Maritime Subsidy Board has spoken. The judicial challenge to its rule, however, is highly relevant to the disposition of this case. Affirmance of the district court's decision would strongly suggest, if not dictate, that the judgment of the trial court now before us be sustained while a reversal, in whole or in part, would suggest a thorough re-examination of the issues of this case in the light of such reversal. Thus, we find ourselves equipped with a substantial amount of guidance from an administrative agency but awaiting a judicial determination which inevitably will be influential in, and possibly controlling of, our disposition of this case. Under these circumstances we believe the proper course of action is to indicate our views with respect to the merits of the controversy before us, based on the administrative and judicial guidance presently available, and to stay the mandate until there has been a final disposition in the consolidated civil actions now before the District of Columbia Circuit. To remand to the district court with instructions to stay all proceedings until there has been an administrative determination of the precise issues before us in which the parties to this litigation participate appears to us to involve needless delay and expense. Therefore, we now turn to the merits.

### II.

■ We agree with the district court's holding that Title VI of the Merchant Marine Act of 1936, 46 U.S.C.A. §§ 1171–1182, does not prohibit the carriage of preference cargo by subsidized carriers. In doing so we reject the plaintiff's contention that an operating differential subsidy is proper only in those circumstances in which the subsidized carrier is in *direct* competition with foreign vessels with respect to available cargo. Foreign competition exists by reason of the presence of foreign carriers operating in the international shipping market whose rates are set by shipping conferences consisting of both foreign and domestic carriers. To limit operating differential subsidies to instances of *direct* competition would reduce the effectiveness of such subsidies quite substantially. As the district court noted the link between the rates set by subsidized domestic carriers, even when bidding for preference cargo, and those of foreign carriers is much too strong to justify withdrawing the subsidy from vessels transporting preference cargo. We have found nothing in the legislative history that requires such a withdrawal.

### III.

■ We also are in accord with the district court's holding that the plaintiff has failed to establish a prima facie case of violation of section 810 of the Merchant Marine Act of 1936, 46 U.S.C.A. § 1227. The relevant part of that section reads:

> It shall be unlawful for any contractor receiving an operating-differential subsidy under sections 1171–1182 of this title or for any charterer of ves-

sels under sections 1191–1204 of this title to continue as a party to or to conform to any agreement with another carrier or carriers by water, or to engage in any practice in concert with another carrier or carriers by water, which is unjustly discriminatory or unfair to any other citizen of the United States who operates a common carrier by water exclusively employing vessels registered under the laws of the United States on any established trade route from and to a United States port or ports.

To support its contentions the plaintiff relies on that portion of the stipulation which establishes (1) that the defendants received operating differential subsidies; (2) that the defendants made bids for preference cargo which would yield revenues "less than fully distributed costs before crediting the operating differential subsidy," (Paragraph 3, Stipulation, n. 1); and (3) that defendants were aware that each was receiving a subsidy and submitting such bids but each was unaware of the actual bids of any other until published by the government.

Such facts are entirely consistent with a fully competitive system once it is determined that vessels transporting preference cargo are entitled to operating differential subsidies. Such a system is not "unjustly discriminatory or unfair" to a citizen of the United States who operates a domestic carrier. It is not made so by an awareness on the part of the defendants that each was submitting bids amounting to less than fully distrib-

uted costs. *Cf.* Independent Iron Works, Inc. v. United States Steel Corp., 177 F.Supp. 743 (N.D.Cal.1959), aff'd, 322 F.2d 656 (9th Cir. 1963), cert. denied, 375 U.S. 922, 84 S.Ct. 267, 11 L.Ed.2d 165 (1963). Moreover, such bids enable the Federal Government to benefit through lower rates from the operating differential subsidy. To permit the taxpayers to receive a direct return from a subsidy made available by their dollars surely cannot be contrary to an act of Congress in the absence of a very clear expression to that effect. Section 810 of the Merchant Marine Act of 1936 contains no such expression.

### IV.

■ The trial court was correct in dismissing the plaintiff's claim that the defendants violated section 2 of the Sherman Act. As the trial court stated, the defendants constantly compete with each other and nothing in the stipulation or record shows that any defendant possessed the required monopoly power.

■ This would be sufficient to dispose of the plaintiff's appeal with respect to the Sherman Act were it not for the fact that it now insists that it should be given the opportunity to develop a factual record to support its claim. It is clear from the record of this case that the plaintiff relied heavily on the stipulation to establish the elements of a section 2 violation. That portion of its amended complaint pertaining to the violation of the antitrust laws, which is set out in the margin,[3] reflects this. It is

---

3. Violation of the Antitrust Laws A. XVI.

Beginning at a date presently unknown to plaintiff, defendants, and each of them, have monopolized or have attempted to monopolize trade and commerce among the several states or with foreign nations; to effectuate such monopoly, and to attempt to monopolize, defendants:

A. Used the economic leverage of their operating differential subsidies to obtain defense, preference, and Public Law 480 cargoes by making unreasonably low bids to the exclusion of plaintiff.

B. Forced the plaintiff out of business by cutting off its existing source of cargo;

C. Submitted bids beneath their actual fully distributed costs;

D. Unlawfully used their operating differential subsidies to obtain control of trade routes;

E. Utilized operating differential subsidies for the carriage of cargo limited by law to United States flag ships.

XVII.

The acts charged in this amended complaint to have been done by each of the defendant corporations were authorized, ordered and done by the officers, agents, employees or representatives of each defendant corporation while actively engaged in the management, direction or control of its affairs, and acting on its behalf within the scope of their employment or agency.

also true that the district court directed the plaintiff to submit "its brief on whether the use of subsidy by defendants on defense and preference cargoes is unlawful and, if so, what remedies are available to it." The brief prepared in response to this order relies almost exclusively on the facts appearing in the stipulation to support its claim of unlawful conduct on the part of the defendants under section 2 of the Sherman Act. Under these circumstances we do not think the trial court erred in rendering judgment against the plaintiff on its Sherman Act claim. Obviously this judgment does not preclude the plaintiff from pursuing antitrust claims against the defendants to the extent such claims are based on acts not appearing in the stipulation and not resting upon the making of bids for carriage of preference cargo that yield revenues "less than fully distributed costs before crediting the operating differential subsidy." As to claims based on such acts, the plaintiff has had its day in court.

Affirmed.

As a direct and proximate result of defendants' conduct as alleged, plaintiff was damaged and lost cargoes, all in an amount presently undetermined; plaintiff requests leave of court to amend this amended complaint when the amount of damages to plaintiff has been more definitely ascertained; plaintiff alleges on information and belief for the period January 1, 1969, to December 31, 1970, it has sustained damages in the sum of $4,145,875.76 as a direct and proximate result of the acts of the defendants.