UNITED STATES of America, Plaintiff,

v.

AMERICAN TELEPHONE AND TELE-
GRAPH COMPANY et al., Defendants.

Civ. A. No. 74–1698.

United States District Court,
District of Columbia.

Nov. 24, 1976.

Philip L. Verveer, Barbara A. Reeves, Laura F. Rothstein, Peter E. Halle, U. S. Dept. of Justice, Washington, D. C., for plaintiff.

Harold S. Levy, New York City, George L. Saunders, Jr., Chicago, Ill., Leonard Joseph, F. Mark Garlinghouse, New York City, Richard J. Flynn, Sidley & Austin, Washington, D. C., for defendants.

John E. Ingle, F.C.C., Washington, D. C., as amicus curiae.

## MEMORANDUM OPINION AND ORDER ON JURISDICTIONAL ISSUES

WADDY, District Judge.

### I.

This action arises under Sections 2 and 4 of the Sherman Antitrust Act, 15 U.S.C. §§ 2 and 4. Plaintiff is the United States of America, acting through the Department of Justice. Defendants are American Telephone and Telegraph Company (AT&T), Western Electric Company, Inc. (Western Electric), a wholly owned subsidiary of AT&T, and Bell Telephone Laboratories, Inc. (Bell Labs), jointly owned by AT&T and Western Electric.

The complaint broadly alleges that defendants, together with numerous co-conspirators, including 23 named telephone companies owned in whole or in part by AT&T, and their subsidiaries (Bell Operating Companies), have engaged in an unlawful combination and conspiracy to monopolize, have attempted to monopolize and have monopolized certain interstate trade and commerce in telecommunications equipment and submarkets thereof. Plaintiff seeks declaratory and injunctive relief, including complete divestiture of Western Electric by AT&T, divestiture by Western Electric of some of its manufacturing and other assets, and divestiture by AT&T of some or all of its "Long Lines Department" from some or all of the Bell Operating Companies.

The defendants did not move to dismiss the complaint but in their answer to the complaint, they alleged the following affirmative defenses: (1) plaintiff fails to state a claim upon which relief can be granted; (2) the Court lacks subject matter jurisdiction; and (3) the matters sought to be litigated herein were previously litigated in a suit between the parties brought in 1949 in the United States District Court for the District of New Jersey, Civil Action No. 17–49, making the issues herein res judicata; and (4) that in the 1956 consent decree terminating Civil Action No. 17–49, the District Court of New Jersey retained exclusive jurisdiction to modify or terminate that decree.[1]

At a hearing on discovery motions held February 20, 1975, the Court indicated its concern over whether the jurisdictional defenses raised in the answer to the complaint were threshold matters which should be resolved before the expensive and protracted discovery inherent in the nature of this case was undertaken by the parties. The Court then sua sponte stayed discovery pending its determination of the jurisdictional questions.

Following extensive briefing and a hearing on July 23, 1975, the Court, on August 5, 1975, invited the Federal Communications Commission (Commission) to participate as amicus curiae. The Commission accepted the Court's invitation, submitting an amicus curiae brief addressing the jurisdictional issues. Subsequent to the Commission's submission, supplemental memoranda were filed by the Department of Justice and the defendants.

1. By Order dated October 1, 1976, this Court determined: (1) that this action is not barred by the doctrine of res judicata because of Civil Action No. 17–49 in the United States District Court for the District of New Jersey; and (2) that the consent decree entered in Civil Action No. 17–49 does not require this Court to relinquish jurisdiction to the New Jersey Court.

Meanwhile, the Commission was engaged in various proceedings and made certain determinations which, it appeared to the Court, embraced some of the same 30 alleged actions and practices pinpointed in Addendum B to the Commission's *amicus* memorandum which it viewed as the basis of plaintiff's Sherman Act monopolization charges.

In light of the *amicus* submissions, and the recent proceedings and determinations by the Commission, the Court, by Order dated October 1, 1976, ordered a further hearing on whether the Federal Communications Act of 1934, 47 U.S.C. § 151, *et seq.* (the Communications Act), and the regulations promulgated pursuant thereto, compelled the conclusion that there was an implied repeal of the antitrust laws. Also included, of necessity, was further consideration of the extent to which exclusive jurisdiction rested with the Commission, and whether and to what extent the doctrine of primary jurisdiction should be invoked. Supplemental memoranda were filed by the parties and the Commission, and a hearing held November 16, 1976.

Briefly stated, defendants contend they enjoy implied immunity from antitrust liability because they are subject to a pervasive scheme of regulation imposed by the Federal Communications Act and state regulatory statutes. They contend that this pervasive regulatory scheme, based as it is upon the public interest standard, is flatly inconsistent with the competition standards underlying antitrust law. With respect to the question of primary jurisdiction, defendants contend that because the Court has no antitrust jurisdiction herein, the question of primary jurisdiction cannot arise, and would not be an appropriate exercise of discretion in this case. Recent Commission decisions, they assert, represent primarily, attempts by the Commission to control anticompetitive behavior initiated by defendants through tariff filings.

Plaintiff contends that Congressional intent is the standard to be applied, and that in this case, neither an express, nor an implied immunity from antitrust liability was intended nor exists. Plaintiff sees absolutely no irreconcilable conflict arising under the Communications Act and the Sherman Act, and contends that the Commission's regulations and recent decisions in proceedings do not in any way affect the statutory scheme, or the antitrust jurisdiction of this Court.

The Commission, as *amicus,* finds no blanket immunity from antitrust liability. It does, however, assert that the following three areas are impliedly delegated to the Commission's exclusive jurisdiction which antitrust courts should not disturb by *ad hoc* rulings: (1) in view of Section 214 of the Act, only the Commission may require, through its certification process, entry into or exit from a communications common carrier market; (2) in view of Section 201 of the Act, antitrust courts should not countermand Commission orders requiring carriers to interconnect their telephone systems; and (3) in view of Section 205 of the Act, courts should not base antitrust relief or remedies upon tariff provisions or conduct pursuant to tariff provisions which the Commission has either "approved or prescribed" after the required investigation.

The Commission urges the Court to refer unsettled issues which may substantially affect the Commission's regulatory policies to the Commission under the doctrine of primary jurisdiction and to take judicial notice where the Commission has settled such questions, so as to reconcile the regulatory scheme and the scheme of the antitrust laws.

## II.

The Federal Communications Act of 1934 contains no express statement of immunity and defendants do not claim the Act expressly exempts them from the antitrust laws. Therefore, immunity, if it exists, must be implied from the statutory scheme and the regulatory powers exercised by the Commission.

██ When faced with implied immunity questions, the courts have undertaken a case-by-case approach which analyzes the

particular industry, the applicable regulatory scheme and procedures, and the statutory history to determine whether operation of the antitrust laws can be reconciled with the regulatory scheme. Where reconciliation cannot be achieved, the antitrust laws must give way.

When Congress passed the Communications Act in 1934, it was well aware of the dominance of AT&T of the telecommunications industry inasmuch as AT&T *was* the telecommunications industry. Provisions of older interstate commerce acts were retained, and new provisions incorporated. The stated purpose of the Communications Act is

". . . to make available, so far as possible, to all people of the United States a rapid, efficient, Nation-wide, and world-wide wire and radio communication service with adequate facilities at reasonable charges, . . ." 47 U.S.C. § 151.

Common carriers are regulated under Title II of the Communications Act, 47 U.S.C. §§ 201–223. The Commission summarizes its mission with respect to common carriers as follows: "(1) to create and maintain a rapid, efficient communications network; (2) to ensure that adequate facilities are provided for the network; and (3) to require the provision of service pursuant to tariffs offering just and reasonable rates, practices, procedures and regulations." [2] Additionally, the Commission has been granted remedial powers sufficient to ensure compliance with its mandate.

Title II of the Communications Act creates a scheme embodying extensive regulatory control. *United States v. Radio Corporation of America,* 358 U.S. 334, 349, 79 S.Ct. 457, 3 L.Ed.2d 354 (1959). However, nothing in the history of federal regulation of the telecommunications industry, beginning with the Mann-Elkins Act of June 18, 1910, 36 Stat. 539, and the Willis-Graham Act of 1921, 42 Stat. 27, and continuing through the Communications Act of 1934, including its legislative history, compels the conclusion that Congress envisioned immunity from antitrust liability.

Such immunity may, however, still be implied if an irreconcilable conflict between the regulatory statute and the antitrust laws exists. It is upon this theory that defendants chiefly rely. In their view, pervasive regulation by federal and state agencies automatically confers antitrust immunity. Alternative grounds supporting their contention of immunity are based on asserted inconsistent standards embodied within the regulatory scheme and antitrust laws.

The Supreme Court has addressed the issue of implied immunity from antitrust laws on a number of occasions. At the heart of each of the Supreme Court's decisions involving implied immunity from antitrust laws is a strong disfavor to find that the regulatory scheme completely displaces antitrust laws. *Pan American World Airways, Inc. v. United States,* 371 U.S. 296, 83 S.Ct. 476, 9 L.Ed.2d 325 (1963); *Hughes Tool Co. v. Trans World Airlines,* 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973). This basic principal is particularly true where commercial relationships "are governed in the first instance by business judgment and not regulatory coercion." *Otter Tail Power Co. v. United States,* 410 U.S. 366, 374, 93 S.Ct. 1022, 1028, 35 L.Ed.2d 359 (1973).

The *Otter Tail* Court held that the power company, although subject to extensive regulation by the Federal Power Commission, was not immune from antitrust action under Section 2 of the Sherman Act. Quoting from *United States v. Philadelphia National Bank,* 374 U.S. 321, 350–51, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1973), the Court emphasized that

"[r]epeals of the antitrust laws by implication from a regulatory statute are strongly disfavored, and have only been found in cases of plain repugnancy between the antitrust provisions and regulatory provisions." *Otter Tail Power Co. v. United States, supra,* 410 U.S. at 372, 93 S.Ct. at 1027.

The Court then went on to observe that "activities which come under the jurisdic-

---

2. Memorandum of Federal Communications Commission as *Amicus Curiae,* at 8.

tion of a regulatory agency nevertheless may be subject to scrutiny under the antitrust laws." *Id.*

■ It is true that a regulatory scheme may be so pervasive that it must displace the antitrust laws in particular and discrete instances. *United States v. National Association of Securities Dealers, Inc.,* 422 U.S. 694, 735, 95 S.Ct. 2427, 45 L.Ed.2d 486 (1975). In each instance, however, the concern has been whether different and potentially conflicting standards with respect to particularized activities and conduct may result, thereby threatening the agency's ability to carry-out its regulatory mandate. Immunity is to be implied only where it is necessary to make the regulatory statutes work, and even then only to the minimum extent necessary. *Silver v. New York Stock Exchange,* 373 U.S. 341, 357, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963).

These basic axioms of construction were recently reaffirmed in *Gordon v. New York Stock Exchange, Inc.,* 422 U.S. 659, 682–683, 95 S.Ct. 2598, 45 L.Ed.2d 463 (1975), and *United States v. National Association of Securities Dealers, Inc.,* 422 U.S. 694, 719–720, 95 S.Ct. 2427, 45 L.Ed.2d 486 (1975).

Merely because Congress has authorized the Commission to regulate the telecommunications industry (even assuming that regulation is viewed as being pervasive) does not automatically necessitate the conclusion that the antitrust laws are to be displaced. As Mr. Justice Harlan observed in his concurring opinion in *United States v. Radio Corporation of America, supra,* 358 U.S. at 353, 79 S.Ct. at 468:

> ". . . a Commission determination of 'public interest, convenience, and necessity' cannot either constitute a binding adjudication upon any antitrust issues that may be involved in the Commission's proceeding or serve to exempt a licensee *pro tanto* from the antitrust laws, . . ."

■ The Court therefore concludes that the Communications Act does not expressly, or impliedly, repeal the antitrust laws. Neither the language, nor the legislative history of the Communications Act supports the conclusion that Congress intended by that Act to grant a total, blanket immunity to defendants from application of antitrust laws, and to place exclusive jurisdiction over all their conduct in the Federal Communications Commission.

■ The Court further concludes that neither the Act, nor the regulations promulgated pursuant thereto, nor the recent proceedings and determinations by the Commission necessitate or support the conclusion that there has been an implied repeal of the antitrust laws with respect to all of the conduct of defendants embraced within the complaint. The Court is satisfied that it has antitrust jurisdiction of at least some of the aspects of the case.

### III.

Having determined the defendants are not completely immune from the antitrust laws, the Court turns next to the applicability of referral to the Commission under the doctrine of primary jurisdiction.

■ Primary jurisdiction issues arise in antitrust litigation where, as here, "conduct seemingly within the reach of the antitrust laws is also at least arguably protected or prohibited by another regulatory statute enacted by Congress." *Ricci v. Chicago Mercantile Exchange,* 409 U.S. 289, 299–300, 93 S.Ct. 573, 579, 34 L.Ed.2d 525 (1973).

■ The procedure typically followed is for the antitrust court to refer preliminary factual and legal questions to the agency while retaining ultimate jurisdiction and "the final authority to expound the statute." *Ricci, supra,* 409 U.S. at 305, 93 S.Ct. at 582, quoting from *Federal Maritime Board v. Isbrandtsen Co.,* 356 U.S. 481, 498, 78 S.Ct. 851, 2 L.Ed.2d 926 (1958). The question of immunity, of course, is not before the agency.

This "prior resort" approach is grounded on the necessity for administrative uniformity and the need for administrative skills found within the appropriate body of experts in handling intricate facts, *United States v. Radio Corporation of America,*

*supra,* 358 U.S. at 346, 79 S.Ct. 457, and grows out of the need to resolve possible conflicts between the antitrust policy of free competition and the regulatory standards. In this case, the regulatory standard is the public interest, convenience and necessity. 47 U.S.C. §§ 201, 214. However, competition is, without a doubt, a factor to be weighed in determining where the public interest lies. *Hawaiian Telephone Company v. F.C.C.,* 162 U.S.App.D.C. 229, 498 F.2d 771, 776 (1974).

Referrals have been used in the past in antitrust suits dealing with communications common carriers as the means of accommodating the overlapping jurisdictions.[3] See, *e. g., United States v. Radio Corporation of America, supra; Carter v. AT&T,* 365 F.2d 486 (5th Cir. 1966); *Chastain v. AT&T,* 401 F.Supp. 151 (D.D.C.1975).

As Judge Gasch observed in the *Chastain* case:

"The purpose of referrals to regulatory agencies pursuant to the doctrine of primary jurisdiction is simply to give the relevant regulatory agency the opportunity to determine the reasonableness and validity of the challenged practice under the regulatory scheme before the Court determines the reasonableness and validity of the practice under the antitrust laws. In this way the primary jurisdiction doctrine seeks to prevent 'sporadic action by federal courts . . . [from] disrupt[ing] an agency's delicate regulatory scheme.'" *Chastain v. AT&T, supra,* 401 F.Supp. at 157, quoting from *United States v. Radio Corporation of America, supra,* 358 U.S. at 348, 79 S.Ct. 457.

Moreover, when certain basic communications issues arise in antitrust proceedings, the regulatory scheme prescribed in Title II of the Communications Act for common carriers would seemingly make referral to the Federal Communications Commission imperative. *Carter v. AT&T, supra,* 365 F.2d at 498, 499.

Accordingly, it appears to the Court, based upon all of the matters that have come before it, including recent Commission activities, that some—or much—of the conduct and practices of defendants upon which plaintiff bases its charges of conspiracy to monopolize, attempts to monopolize and monopolization might well be subject to the doctrine of primary jurisdiction. The Court, in its discretion, will in the future, consider referring particular issues to the Commission at the appropriate time. At this stage in the proceedings, however, the issues must be more sharply defined through discovery and other proceedings permissible under the Federal Rules of Civil Procedure.

## IV.

Defendants, in their answer to the complaint, asserted that the complaint fails to state a claim upon which relief can be granted. With respect to the argument that the complaint is vague, the Court agrees that it is vague. However, the failure of the complaint to set forth specific acts to support its general allegations of antitrust jurisdiction is not sufficient grounds for dismissal since the Federal Rules of Civil Procedure do not require a complainant to set out in detail all of the facts upon which he bases complaint. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

The Rules also provide for a more definite statement, discovery proceedings, depositions, and other pretrial procedures, all of which can add content to the complaint. The Court notes that already allegations of more specific conduct and activity on the part of defendants have surfaced in plaintiff's various memoranda.

## V.

In summary, inasmuch as neither party has made a motion raising the jurisdictional issues, the Court, *sua sponte,* finds and or-

---

3. The Commission has encouraged the Court to utilize the procedure by means of a precise referral order calling upon the agency to ad-

dress specific questions under the Communications Act. Supplemental Memorandum of F.C.C. as *Amicus Curiae,* at 5.

ders: (1) that defendants do not have blanket immunity from antitrust liability, either expressly or by implication; (2) that the Court has antitrust jurisdiction in this case; and (3) that should it become necessary in the course of these proceedings, the Court will consider the appropriateness of referring certain issues to the Federal Communications Commission under the doctrine of primary jurisdiction.

These determinations and orders shall govern the future course of this litigation unless subsequently changed by order of the Court.