**JARVIS, INC., et al., Plaintiffs,**

**v.**

**AMERICAN TELEPHONE AND TELEGRAPH COMPANY et al., Defendants.**

**Civ. A. No. 74–1674.**

United States District Court, District of Columbia.

Aug. 7, 1978.

Bruce P. Saypol, Cohn & Marks, Washington, D. C., for plaintiffs.

Michael Boudin, Stuart C. Stock, Washington, D. C., Howard C. Anderson, John M. Kelleher, Washington, D. C., for defendants.

## MEMORANDUM

AUBREY E. ROBINSON, Jr., District Judge.

This is an action in which certain businesses engaged in the sale and lease of key telephone terminal equipment capable of interconnection with the Bell System charge that various entities in the Bell System[1] have restrained competition, have attempted and conspired to monopolize, and have monopolized trade in the key telephone terminal equipment market in viola-

---

1. Defendants include the American Telephone and Telegraph Company, Bell Telephone Laboratories, Inc., Western Electric Company, Inc., and The Chesapeake and Potomac Telephone Company. .

tion of the Sherman Act, 15 U.S.C. § 1, *et seq.* The matter is before the Court on Defendants' motion to dismiss.[2] For the reasons discussed below, the Court finds that the motion must be denied.

From its inception, the telecommunications network has been subject to a variety of federal and state controls imposing a range of service responsibilities on participating carriers. The Communications Act of 1934, 47 U.S.C. § 151, *et seq.* was enacted to coordinate and regulate the federal aspects of the provision of telecommunications service. The Communications Act combines with various state legislation to provide an intricate structure of regulation in the telecommunications industry. Carriers receive approval for services through tariffs filed with the state and federal agencies. Agency approval of tariffs is based upon a determination of whether or not the tariffs submitted serve the public interest. See 47 U.S.C. § 203(c); D.C.Code § 43–329.

In 1968, the Federal Communications Commission ruled in *In the Matter of Carterfone*, 13 F.C.C.2d 420, *reconsideration denied*, 14 F.C.C.2d 571, that Defendants' tariffs prohibiting interconnection to the network of certain customer-provided telephone equipment were unjust and unreasonable under the Communications Act. The Bell System responded to *Carterfone* by filing revised tariffs which, *inter alia*, permitted the direct electrical connection of customer-provided equipment through an appropriate protective connecting arrangement to be provided, installed and maintained by the telephone companies at the

customer's expense.[3] At the same time, Defendants modified their ratemaking policies and devised new payment plans in the terminal equipment field. One such payment plan is the so-called "two-tier payment option" which divides the rate for equipment provided by the carrier into two components, one payable over a term of years, allowing the customer to capitalize the costs of the equipment, and the other payable monthly, allowing recovery for ongoing maintenance expenses. Such payment options are not offered to customers electing to use equipment of independent suppliers.

Plaintiffs filed the instant lawsuit on November 4, 1972. Plaintiffs allege that Defendants have engaged in a conspiracy to force Plaintiffs out of the key telephone terminal equipment market. Plaintiffs allege, principally, that Defendants' protective connecting arrangement and two-tier pricing rates are anti-competitive and violative of the Sherman Act. The issue before the Court on Defendants' motion to dismiss is whether consideration of the propriety of Defendants' tariffs is committed to the exclusive jurisdiction of the F.C.C. and the state regulatory agencies and outside the purview of the federal antitrust laws.

Defendants argue that their interconnection and pricing policies are subject to pervasive regulation under the Communications Act and related state regulatory statutes; that the standard under which this regulation proceeds is a public interest standard different from and inconsistent with the standard of competition embodied in the antitrust laws; and that by virtue of

---

**2.** In addition to the motion to dismiss, presently pending before the Court is Plaintiffs' motion for partial summary judgment with respect to certain affirmative defenses pleaded in Defendants' Answer. In part, Plaintiffs' motion involves the same issue of exclusive regulatory jurisdiction raised by the motion to dismiss and is accordingly governed by the discussion in the body of this Memorandum. In part, Plaintiffs' motion relates to claims of primary jurisdiction and exhaustion of remedies asserted by Defendants. However, Defendants have presently withdrawn those defenses and in view of the current posture of the case the Court finds

it inappropriate to entertain Plaintiffs' motion for partial summary judgment with regard to these claims.

**3.** Subsequent to the filing of the post-*Carterfone* tariffs, the F.C.C. and a number of state agencies instituted investigations into the problems posed to the telecommunications system by interconnection. In 1977, the F.C.C. established a registration program whereby equipment satisfying the detailed technical criteria prescribed by the F.C.C. and registered with the Commission does not require a protective connecting arrangement.

this continuous and pervasive regulation, Defendants' conduct in question herein is impliedly immune from liability under the federal antitrust laws.

■■■ The Court approaches these arguments mindful that exemptions to antitrust liability are disfavored and narrowly applied. *Silver v. New York Stock Exchange,* 373 U.S. 341, 348, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963). Implied antitrust immunity can be justified only by a convincing showing of clear repugnancy between the antitrust laws and the regulatory system involved and it is the duty of the Courts to reconcile the antitrust and regulatory statutes where feasible. *United States v. National Association of Securities Dealers, Inc.,* 422 U.S. 694, 719–720, 95 S.Ct. 2427, 45 L.Ed.2d 486 (1975). Courts are to imply exceptions to the antitrust laws only when such exceptions are necessary to make the regulatory statute work, and even then only to the minimum extent necessary. *Cantor v. Detroit Edison Co.,* 428 U.S. 579, 597, 96 S.Ct. 3110, 49 L.Ed.2d 1141 (1976).

■■■ Upon careful examination of the record in the case, this Court is not persuaded that Defendants have made the requisite showing of clear repugnancy between the proscription of the antitrust laws and the regulatory requirements of state and federal communications laws. Activities which come under the jurisdiction of a regulatory agency nevertheless may be subject to scrutiny under the antitrust statutes. *Otter Tail Power Co. v. United States,* 410 U.S. 366, 372, 93 S.Ct. 1022, 35 L.Ed. 359 (1973). With respect to the public interest standard of the communications laws, that standard is not necessarily inconsistent with the competition standard at work in the Sherman Act. Compare *Federal Communications Commission v. RCA Communications, Inc.,* 346 U.S. 86, 93, 73 S.Ct. 998, 97 L.Ed. 1470 (1953) with *MCI Telecommunications Corp. v. Federal Communications Commission,* 182 U.S.App.D.C. 367, 561 F.2d 365, 379–380 (D.C.Cir. 1977), *cert. denied,* 434 U.S. 1040, 98 S.Ct. 781, 54 L.Ed.2d 790 (1978) and *Bell Telephone Company of Pennsylvania v. Federal Communications Commission,* 503 F.2d 1250, 1271 (3d Cir. 1974), *cert. denied,* 422 U.S. 1026, 95 S.Ct. 2620, 45 L.Ed.2d 684 (1975); see also *United States v. American Tel. & Tel. Co.,* 427 F.Supp. 57 (D.D.C.1976), *cert. denied,* 429 U.S. 1071, 97 S.Ct. 824, 50 L.Ed.2d 799 (1977), *cert. denied,* 434 U.S. 966, 98 S.Ct. 507, 54 L.Ed.2d 452 (1977). The Court finds that interconnection and rate tariff regulation does not in and of itself foreclose application of the antitrust laws.[4]

■■■ It is well-established that the question of implied immunity must be resolved on a case-by-case basis. *United States v. American Tel. & Tel. Co.,* 427 F.Supp. at 59–60. The Court has considered the various authorities cited by Defendants which have found carrier tariff activity to be impliedly immune from antitrust liability,[5] but is persuaded that those cases in inapposite to the matter at hand. To the extent that those cases do have application to the instant controversy, this Court declines to follow those decisions.

■■■ The Federal Communications Commission has never formally approved Defendants' post-*Carterfone* tariffs.[6] The present form of Defendants' tariffs has

---

4. See *United States v. American Tel. & Tel. Co.,* supra. See also *Industrial Communications Systems, Inc. v. Pacific Telephone and Telegraph Co.,* 505 F.2d 152, 156 (9th Cir. 1974) and *Woodlands Telecommunications Corp. v. American Tel. & Tel. Co.,* 447 F.Supp. 1261 (S.D.Tex.1978).

5. See, inter alia, *Mobilfone of Northeast Pennsylvania v. Commonwealth Telephone Co.,* 428 F.Supp. 131 (E.D.Pa.1977), aff'd, 1978–1 Trade Cases ' 61,873 (3d Cir. February 8, 1978); *Western Electric Company, Inc. v. Milgo Electronics Corp.,* 573 F.2d 255 (5th Cir. 1978);

*Essential Communications Systems, Inc. v. American Tel. & Tel. Co.,* 446 F.Supp. 1090 (D.N.J.1978); *Selectron, Inc. v. Pacific Northwest Bell,* No. 76–965–BE (D.Or. June 19, 1978); *Phonetele, Inc. v. American Tel. & Tel. Co.,* 435 F.Supp. 207 (C.D.Cal.1977); *DASA Corporation v. General Telephone Co. of California,* No. CV–73–2511–LTL (C.D.Cal. May 10, 1977).

6. See In Re ATT "Foreign Attachments" Tariff Revisions, 18 F.C.C.2d 605, 610 (1968).

been mandated by neither federal nor state regulatory agencies. In the wake of *Carterfone*, substantial initiative was vested in the telephone companies to revise their tariffs and to decide upon the specific arrangements which would be employed to protect the telecommunications network with respect to use of customer-provided interconnection equipment. See *First Report and Order in Docket Number 19538*, 56 F.C.C.2d 593, 596 (1975), *aff'd sub nom. North Carolina Utility Comm'n v. Federal Communications Commission*, 552 F.2d 1036 (4th Cir. 1977), *cert. denied*, 434 U.S. 874, 98 S.Ct. 222, 54 L.Ed.2d 154 (1977). In fact, in the *First Report and Order decision*, the F.C.C. indicated disfavor with the post-*Carterfone* tariffs and proceeded to prescribe a registration program for customer-provided equipment. Thus it appears that the state and federal regulatory agencies, in implementing the policies and purposes of the state and federal communications laws, have not required the specific conduct which Plaintiffs complain herein is violative of the antitrust laws.

Hence, while state and federal regulation of the post-*Carterfone* tariffs may be comprehensive and active, this regulation is not so pervasive or extensive that the range of optional behavior left to the carriers is *de minimis*. Under the operative regulatory schemes, it appears that Defendants have retained the ability to exercise independent business judgments in certain of their activities and to construct their tariffs accordingly. Therefore the Court must reject application of the exemption doctrine of *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943).[7] As the Supreme Court announced in *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 791, 95 S.Ct. 2004, 2015, 44 L.Ed.2d 572 (1975), "It is not enough that . . . anticompetitive conduct is 'prompted' by state action; rather, anticompetitive activities must be compelled by direction of the State acting as a sovereign". See also *Cantor v. Detroit Edison Co., supra.*

The Court concludes that regulatory control of customer-provided interconnection devices and carrier pricing plans is not incompatible with the application of the antitrust laws. The Court rejects Defendants' claims of absolute immunity from antitrust liability and thus must deny Defendants' motion to dismiss.[8]

---

**7.** See also *Gordon v. New York Stock Exchange*, 422 U.S. 659, 95 S.Ct. 2598, 45 L.Ed.2d 463 (1975); *United States v. National Association of Securities Dealers*, supra; *Business Aides, Inc. v. Chesapeake & Potomac Tel. Co. of Virginia*, 480 F.2d 754 (4th Cir. 1973).

**8.** In addition to Plaintiffs' antitrust challenge to Defendants' tariffs, Plaintiffs' complaint sets forth additional charges which do not relate directly to the tariff provisions. Among these charges are claims that Defendants have conspired to copy and misappropriate Plaintiffs' equipment and claims that Defendants have conspired to defeat free and unlimited access by Plaintiffs to the various regulatory agencies monitoring Defendants' conduct. Defendants describe these non-tariff matters as ancillary to the interconnection and pricing issues herein and equally subject to dismissal on implied immunity/exclusive jurisdiction grounds. See, e. g., *United States v. National Association of Securities Dealers, Inc.*, supra; *United States Navigation Company v. Cunard Steamship Co.*, 284 U.S. 474, 52 S.Ct. 30, 76 L.Ed. 518 (1932). Given the Court's ruling that no absolute immunity from antitrust liability obtains in this case, the Court cannot dismiss these non-tariff charges on that basis. Defendants have urged independent grounds for dismissing these claims, but while the Court is concerned whether misappropriation is properly pleaded as an antitrust violation, see *Monitor Business Machines, Inc. v. American Tel. & Tel. Co.*, 1978 1 Trade Cases, No. 62,030, at 74, 445–46, (C.D.) Cal. 1978), and whether Plaintiffs' assertions of denial of access to the regulatory process sufficiently state a viable claim, compare *California Motor Trans. Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972) with *Franchise Realty Interstate Corp. v. San Francisco Local Joint Exec. Board of Culinary Workers*, 542 F.2d 1076 (9th Cir. 1976), cert. denied, 430 U.S. 940, 97 S.Ct. 1571, 51 L.Ed.2d 787 (1977), the Court elects to reserve ruling on these questions.